**In re Jeffrey George BROWN, Debtor.**

**Bankruptcy No. 82 B 20046.**
**82 Adv. 6057.**

United States Bankruptcy Court,
S. D. New York.

June 3, 1982.

Sidney Turner, White Plains, N.Y., trustee.

William W. Siegel, New York City, for American Express Company; Weil, Gotshal & Manges, New York City, of counsel.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy in this Chapter 7 case seeks to recover as an avoidable preference under 11 U.S.C. § 547 the sum of $6664.36 paid by the debtor to the American Express Company for credit card transactions that occurred within 90 days immediately preceding the filing of the debtor's

petition under Chapter 7 of the Bankruptcy Code. The defendant, American Express Company, resists the trustee's complaint and asserts as a defense that the payment of these clearly antecedent debts should be protected under 11 U.S.C. § 547(c)(2) because the 45-day exception for ordinary course of business payments commences from the date of the monthly billing statement rather than from the date of each credit transaction included in the bill. Hence, the issue for determination is when was the debt "incurred" within the meaning of the 45-day exception under 11 U.S.C. § 547(c)(2)?

## FACTS

The basic facts are not disputed. The debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code on January 21, 1982. On December 2, 1981 and on December 10, 1981, the debtor made two payments of $6164.36 and $500, respectively, to American Express Company, the defendant in this case, on account of his antecedent indebtedness for credit card charges. These payments were made within the 90 days immediately preceding the filing of the debtor's Chapter 7 petition.

During the 90-day period preceding the Chapter 7 petition the American Express Company issued to the debtor three monthly billing statements dated October 30, 1981, November 30, 1981 and December 30, 1981, reflecting the monthly credit charges, payments and outstanding balance due at the end of each such month. The payments, totaling $6664.36, that were made by the debtor in December, 1981 were within 45 days of the date of the November 30, 1981 monthly billing statement. As of October 1, 1981, the debtor's on account credit card obligation to the American Express Company amounted to $815.24, which was paid by the debtor on October 9, 1981.

## DISCUSSION

■ Under Code § 547(b), a preference occurs if there is a transfer of property of the debtor to or for the benefit of a creditor on account of an antecedent debt made while the debtor is insolvent and with the effect of giving the creditor a greater return on his debt than would have been the case had the transfer not taken place and had there been a distribution under the liquidation provisions of the Code. Added to these statutory elements, all of which are present in this case, is the factor that Code § 547(e)(4) creates a presumption of insolvency during the ninety days immediately preceding the filing of the bankruptcy petition. Accordingly, the defendant, American Express Company, seeks to preserve what would otherwise be voidable preferential credit card payments within the 90-day period, by relying on one of the six exceptions to the voidable preference concept delineated under Code § 547(c).

## ORDINARY COURSE PAYMENTS

■ Code § 547(c)(2) exempts payments made to a creditor within 45 days after the debt "was incurred", if both the debt and the payment occurred in the ordinary course of the debtor's business or financial affairs and the payment was made according to ordinary business terms. This exception was required because under the former Bankruptcy Act a preference could not be avoided if the trustee could not prove that the creditor had reasonable cause to believe that the debtor was insolvent. Thus, most payments in the ordinary course of business were protected because such prompt payments would normally not cause any suspicions of insolvency. However, with the shift in policy under the new Bankruptcy Code creating a presumption of insolvency within 90 days before the filing of a bankruptcy petition, a strict liability rule resulted from the deletion of the "reason to believe" standard. Therefore, protection for these ordinary course payments was required in order to support normal business transactions.

Short term credit, which normally involves relatively small amounts, was originally intended to be protected when the Commission on the Bankruptcy Law proposed that payments made within five days of the filing of the petition and payments in small amounts should be excepted from

avoidance as preferences. *Commission Report*, Part II, pp. 166–67, § 4–607(b)(g)(1). Although the Commission's proposal was not adopted in its original form, the 45-day limitation period continued the concept of protection for short term payments, which are usually relatively small in amount.

Credit card transactions require a special analysis in light of the 45-day rule because they usually reflect numerous separate transactions with different supplies of goods and services, but all billed by the credit card company on one single monthly statement. The defendant, American Express Company, maintains that it does not expect repayment for any transaction until after it issues its monthly statement. Therefore the defendant reasons that the debtor's obligation for credit card debts was not "incurred" until after the issuance of the monthly billing statement and that the 45-day exception period commences from the date of the monthly billing statement and not from each separate credit transaction during the billing month.

In support of its position that each individual credit transaction should be disregarded and that emphasis should be placed upon the collective monthly billing figure, the defendant cites *Sternberg et al. v. Citicorp Credit Services, Inc. et al.*, 69 A.D.2d 352, 419 N.Y.S.2d 142, (2d Dept. 1979) *aff'd* 50 N.Y.2d 856, 430 N.Y.S.2d 54, 407 N.E.2d 1350. That case dealt with ascertaining when service charges should be accrued on credit card transactions for billing purposes in New York. Crucial to that decision was a determination of what the New York Legislature meant when it said that services charges should be computed on the buyer's total outstanding indebtedness "from month to month." It was there held that the New York Legislature intended that the service charge should be computed at consistent monthly intervals on the customer's outstanding indebtedness at that time.

In the instant case, an interpretation of what the New York Legislature meant for the purpose of computing finance charges on credit card transactions is not controlling in deciding what Congress meant by exempting from preferential treatment under the Bankruptcy Code a payment made within 45 days from when the debt "was incurred."

The debtor's obligation to the defendant, American Express Company, arises out of a series of unconnected transactions with various independent suppliers of goods and services. As to each transaction the debtor had the option of paying cash or charging for the item. When the debtor elected to charge the item as a credit transaction, a charge card was employed and a printed charge receipt was issued to the debtor by a specific merchant. At this point a credit obligation "was incurred." Credit was extended and a debt was created.

Case law is consistent with the interpretation that in determining when a challenged debt was "incurred", reference must be made to the date when the debtor obtains a property interest in the consideration exchanged for the debt rather than when the invoice or statement is sent. *Barash v. Public Finance Corp.*, 658 F.2d 504, 509 (7 Cir. 1981); *In re Ray W. Dickey & Sons, Inc.*, 11 B.R. 146, 7 B.C.D. 901 (Bkrtcy. N.D.Tex.1980).

In this case, American Express Company submitted photo copies of the monthly statements. However, some of the receipt slips for specific transactions were not furnished, notwithstanding that the date of each transaction would be reflected on the receipt slip. The monthly statements do show all of the transactions that occurred in a particular month, all of which are referred to by an American Express Company reference number. However, most of the transactions bear only reference numbers and no dates. Thus, for the purpose of ascertaining American Express Company's defense under the 45-day exception, only the dated transactions listed on the statements or indicated on the receipt slips submitted by American Express Company may be considered as proof.

Applying the 45-day exception rule to each dated transaction, the debtor's payment of $6164.36 on December 2, 1981 may repay without avoidance transactions occurring after October 18, 1981 and up to and including December 2, 1981; the 45-day pe-

riod immediately preceding the payment. The dated transactions appearing from the proof submitted by American Express Company during this period total $3882.70. The difference of $2281.66 represents transactions beyond the 45-day period and outside the exception under Code § 547(c)(2). Similarly, the debtor's payment of $500 on December 10, 1981 may safely repay those dated transactions that were incurred in the 45-day period between October 26, 1981 and December 10, 1981. The open transactions during this period for which American Express Company furnished dates totalled $219.27. Therefore the difference of $280.73 constitutes an on account payment for transactions that were not established by American Express Company to have occurred within the 45-day exception period.

The total preferential payments established by the trustee in bankruptcy for which the American Express Company has failed to prove an exception under Code § 547(c)(2) amounts to $2562.39. The trustee is therefore entitled to recover from the American Express Company the sum of $2562.39.

SUBMIT ORDER on notice.