In the Matter of GOLD COAST SEED COMPANY, an Oregon corporation, Debtor.

GOLD COAST SEED COMPANY, an Oregon Corporation, and M. Nolden, Trustee, Plaintiff-Appellee,

v.

BEACHNER SEED COMPANY, Defendant-Appellant.

BAP No. NC–82–1015–GVE.

Bankruptcy No. 4–80–02038–H.

Adv. No. 4–81–0129–AH.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued July 15, 1982.

Decided Sept. 30, 1982.

Nancy Page, Irving J. Kornfield, P.C., Oakland, Cal., for defendant-appellant.

Maureen McQuaid, Phelan, Stuppi & Sorensen, San Francisco, Cal., for plaintiff-appellee.

Before GEORGE, VOLINN and ELLIOTT, Bankruptcy Judges.

## OPINION

Lloyd D. GEORGE, Bankruptcy Judge:

The defendant/appellant, BEACHNER SEED COMPANY ("Beachner"), appeals from a summary judgment entered against it in the amount of $19,535.00, less a credit of $237.69. We AFFIRM.

## BACKGROUND

Prior to the debtor, GOLD COAST SEED COMPANY ("Gold Coast"), filing its petition herein, Gold Coast and Beachner were engaged in the buying and selling of different types of seed. While so engaged, on July 9, 1979, these parties entered into an agreement whereby Gold Coast purchased some 160,000 pounds of Kentucky 31 Fescue grass seed from Beachner for a price of $59,200.00. Shipment of this seed was to be in February or March of 1980 and the terms of payment thereon were to be net cash against the shipping documents, payable upon first presentation.

In February 1980, Beachner informed Gold Coast that this shipment was ready for transporting. Nevertheless, the seed was never shipped from Beachner's warehouse. Instead, on March 19, 1980, Beachner repurchased the seed from Gold Coast to send to another buyer. By that time, however, the market price of this type of seed had fallen and the repurchase price was set at $40,-000.00, resulting in a balance of $19,200.00 due and owing Beachner.

On March 22, 1980, pursuant to custom in the seed trade, Beachner sent Gold Coast an invoice for this remaining $19,200.00, which stated that payment on this sum was due in twenty (20) days following the receipt of that document. Gold Coast, however, did not make this payment. Rather, on April 18, 1980, some 26 days after the receipt of the invoice, a contract was entered into whereby Gold Coast agreed to sell some $19,535.00 worth of Oregon Annual Rye grass seed to Beachner, as a setoff against the $19,200.00 then owing the defendant/appellant. This seed was, thereafter, shipped on April 23, 1980, and April 30, 1980. Payment of the $335.00 difference in the above sums, minus $97.31 for finance charges—or $237.69—was then made by Beachner.

On June 30, 1980, Gold Coast filed its petition for relief under Chapter 11 of the Bankruptcy Code.

As debtor-in-possession in its Chapter 11 case, Gold Coast thereafter sought to set aside the transfer of the rye seed to Beach-

ner. Its complaint was based upon two principal causes of action: 1) that the transfer to Beachner was a voidable preference and 2) that the debt incurred by Beachner in receiving the shipments of the rye seed represented an unenforceable attempt of setoff. Arguing these grounds, on October 5, 1981, Gold Coast moved for summary judgment. Beachner then responded with its own motion for summary judgment. On or about November 30, 1981, the trial court entered a summary judgment in favor of the debtor/plaintiff and against the defendant/appellant. The instant appeal then ensued.

On January 28, 1982, Gold Coast's Chapter 11 case was converted to a case under Chapter 7 and a trustee was appointed to handle the property of the debtor's estate. This trustee has since proceeded with the defense of the debtor's judgment on appeal.

## II. ANALYSIS OF THE FACTS AND THE LAW

■ There seems to be little question that the April 1980 transfer of the rye grass seed tentatively falls within the general preference provisions of 11 U.S.C. § 547(b). At issue is whether these two shipments also fit the criteria of the "ordinary course of business" exception found at 11 U.S.C. § 547(c)(2). This exception mandates:

"(c) The trustee may not avoid under this section a transfer—

. . . .

"(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms

. . . ."

Beachner argues that the procedure utilized in satisfying the amounts due it from Gold Coast through the sale of grass seed stock was ordinary in the seed trade and in these parties' past business dealings, being commonly referred to as a "washout." The trial court was, nevertheless, troubled by what appeared to be nothing more than an attempt by Beachner to receive more than other creditors. In this regard, the trial court noted the following facts, which led it to conclude that the transfer was a simple preference, without business justification:

"a. The two transactions were virtually an exact offset.

"b. There were no further sales or purchases.

"c. The two transactions were entered into after Gold Coast's payment was overdue: Payment was due from Gold Coast within 20 days of receipt of the March 19 invoice. Assuming four days before delivery, receipt took place on March 22. Twenty days were up on April 12. Beachner's two purchases from Gold Coast were by contracts dated April 18, when Gold Coast was overdue almost a week.

"d. The two contracts expressly provided for the offset.

"e. Beachner's letter of August 19 confirmed that the 'purchases or buybacks made were to reduce your account with us.' "

Appellant's E.R., at 30–31.

We agree with the trial court that these facts—and, in particular, fact c.—take the transfer of April 1980, as a matter of law, outside the ordinary course of business for both Beachner and Gold Coast. The transfer, therefore, did constitute a preference voidable by the debtor-in-possession or trustee.

■ Looking next to whether this transfer resulted in the creation of an enforceable setoff for the debt previously owed Beachner by the debtor, the following language from 11 U.S.C. § 553(a)(3) must be noted:

"(a) Except as otherwise provided in this section and in sections 362 and 363 of

this title, this title does not affect any right of creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

. . . .

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor."

■ Beachner does not dispute the applicability of subsections (A) and (B) to the facts surrounding its dealings with Gold Coast. It only questions the debtor/plaintiff's assertion that this debt was incurred "for the purpose of obtaining a right of setoff against the debtor." Once again, the defendant/appellant claims that its actions were simply part of an ongoing business practice, used both by it and by other companies in the commercial seed industry. Even assuming that such a practice commonly existed, however, we note that there is no "ordinary course of business" exception to protect Beachner from the provisions of 11 U.S.C. § 553(a)(3). Moreover, we find that the facts cited above from the trial court's "Memorandum for Opinion" more than adequately support the legal conclusion that Beachner obtained the April 1980 transfer from Gold Coast in order to offset that obligation against the amounts owing it.

### III. CONCLUSION

We find and hold that the undisputed facts presented the trial court, pursuant to the respective motions of these parties, support that court's legal conclusions and summary judgment in this proceeding.

AFFIRMED.