**In the Matter of KENNESAW MINT, INC., Debtor.**

**Ezra H. COHEN, Trustee, Plaintiff,**

v.

**Peter C. KERN, Defendant.**

**Bankruptcy No. 81–03381A.
Adv. No. 82–0455A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Aug. 25, 1983.

Mary Grace Diehl, Atty. at Law, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for plaintiff.

Elizabeth A. Edelman, Atty. at Law, Rubin, Winter, Goger & Kirwan, P.C., Atlanta, Ga., for defendant.

## MEMORANDUM OF OPINION

A.D. KAHN, Bankruptcy Judge.

This is a preference action before the Court on Plaintiff's motion for summary judgment. The Plaintiff, Trustee in bankruptcy of the estate of Kennesaw Mint, Inc. [Debtor], seeks to recover $34,797.45 in alleged preferential payments made by the Debtor to Peter C. Kern, the Defendant herein.

The Debtor in this case was engaged in the business of refining and selling precious

metals. Customers routinely placed orders for gold or silver by paying cash to the Debtor, with the metal to be delivered at a later specified time. On or about June 16, 1981, the Defendant [Kern] gave the Debtor a check for $206,340.00 for the purchase of silver to be delivered to him on June 30, 1981. No silver was delivered pursuant to that order. From July 14, 1981, to September 4, 1981, within 90 days of the filing of the petition and shortly thereafter, the Plaintiff [Trustee] alleges that the following transfers of the Debtor's property were made to Kern by the Debtor or at the Debtor's direction:

| | | |
|---|---|---|
| (1) | July 14, 1981 | Kern withdrew $7,000.00 from the Debtor's bank account; |
| (2) | August 6, 1981 | The Debtor endorsed a check for $1,000.02 received from PETER UMBERTO/WHAT NERVE, INC. (representing partial payment for the purchase of stock in the Debtor) to Kern; |
| (3) | August 13, 1981 | Kern received $11,361.12 by check from SIPI METALS CORP. (representing funds owed to the Debtor by SIPI); |
| (4) | August 21, 1981 | Kern received $8,741.62 from SIPI which SIPI owed to the Debtor; |
| (5) | September 4, 1981 | Kern received $5,694.71 from SIPI which SIPI owed to the Debtor; |
| (6) | September 4, 1981 | The Debtor endorsed a second check for $1,000.03 from UMBERTO/WHAT NERVE, INC., to Kern. |

The Trustee contends that these payments are voidable preferences recoverable under either 11 U.S.C. § 547(b) or 11 U.S.C. § 549(a). Section 547(b) permits the trustee to avoid a pre-petition transfer of property of the debtor which is (1) to or for the benefit of a creditor; (2) on account of an antecedent debt; (3) made while the debtor was insolvent; (4) on or within 90 days before the bankruptcy; and (5) which enabled the creditor to receive more than he would have received in a liquidation case if the transfer had not been made. Section 549(a) allows the trustee to avoid a post-petition transfer of property of the estate that is not authorized by the Code or the Court.

Kern admits receipt of the payments but denies that they constitute avoidable preferences. He contends that the avoidance provisions of the Code do not apply because the transfers did not come from the Debtor and were not all funds of the Debtor. He also maintains that the Debtor was not insolvent at the time the transfers were made and that the Trustee has failed to carry his burden of proof regarding the other essential elements of the preferences. Alternatively, Kern alleges that the transfers are not avoidable because they were contemporaneous exchanges for new value given the Debtor, as permitted under 11 U.S.C. § 547(c)(1), and were made in the ordinary course of business and within 45 days after the debt was incurred, as permitted by 11 U.S.C. § 547(c)(2). Finally, he argues that it would be a gross injustice to allow the Trustee to recover these payments without pursuing recovery from other creditors to the extent they benefited from the Debtor's use of Kern's $206,340.00.[1]

Both parties have submitted affidavits and supporting documents as contemplated by Rule 56(c) of the Federal Rules of Civil Procedure, which applies to this proceeding by virtue of Bankruptcy Rule 756.

Under both Code provisions on which the Trustee relies, his power to recover property preferentially transferred depends on the ownership of that property. Avoidable pre-

---

1. In his response to the Trustee's motion, Kern also renewed his assertions concerning this Court's lack of personal and subject-matter jurisdiction; change of venue; insufficiency of process; and the unconstitutionality of the Local Rule of the district court, which provides for the automatic reference of Title 11 cases and proceedings to the bankruptcy judges. Except for the question of venue on which ruling was deferred, the Court has previously held that these contentions lack merit. They have not been considered further for purposes of this motion.

petition transfers must be property of the debtor, 11 U.S.C. § 547(b); and post-petition transfers must be property of the estate, 11 U.S.C. § 549(a). Ownership of the transferred property is disputed in this case.

The Trustee has offered the affidavit of Connie Mack Berry [Berry], former president of the Debtor, to the effect that all six transfers were property of the Debtor or the estate, although three of them were payments of funds owed to the Debtor by a third party and were transferred to Kern at Berry's direction. Such indirect transfers are avoidable as preferences. See 11 U.S.C. § 101(40); In re Moskowitz, 13 B.R. 357, 7 B.C.D. 1314 (Bkrtcy.S.D.N.Y.1981). Berry's affidavit recites the amount and source of each transfer; its contents are based on his personal knowledge and constitute evidence which would be admissible at trial. It therefore meets the basic requirements for affidavits set out in Rule 56(e). See McDaniel v. Waits (In re National Buy-Rite, Inc.), 7 B.R. 407, 3 C.B.C.2d 431, 434 (Bkrtcy.N.D.Ga.1980) [National Buy-Rite].

■ The Trustee's affidavit is accompanied by copies of letters, checks, and other business records exchanged by the parties which are referred to in the affidavit. However, no documents are offered to evidence Kern's withdrawal of $7,000.00 from the Debtor's bank account on July 14, 1981,[2] contrary to the requirement of Rule 56(e) that sworn or certified copies of all papers referred to in an affidavit must be attached to it. The Court may, however, consider any material that would be usable at trial for purposes of a motion for summary judgment. Wright, Miller & Kane, Fed.Prac. & Proc.: Civil 2d § 2721 [Wright & Miller]. This includes a defective affidavit if there is no timely objection to it and if its consideration would not result in a gross miscarriage of justice. Id. at §§ 2722 and 2738. National Buy-Rite, at 409, 3 C.B.C.2d at 434. Kern has not challenged the sufficien-

cy of the affidavit or objected to the omission of any of the documents to which it refers. The Court therefore finds that no gross injustice will result if the affidavit is considered for purposes of this motion.

Kern's pleadings dispute the Debtor's ownership of the transferred funds but his affidavit does not address the issue.[3] Instead, he has submitted copies of U.C.C. financing statements showing his security interest in virtually all the assets of various debtor-related entities and individuals. It is not clear to the Court how proof of others' indebtedness to Kern is relevant to the Debtor's indebtedness, or how such proof provides evidence of the ownership of the funds transferred.

■ Although for purposes of a motion for summary judgment the opposing party is given the benefit of every reasonable doubt in determining whether a genuine factual issue exists, Kellerman v. Askew, 541 F.2d 1089 (5th Cir.1976); Wright & Miller, supra, at § 2727, Rule 56 requires that if the moving party supports his motion with appropriate evidentiary material, the opposing party cannot merely rely on his pleadings, but must furnish some proof of his own. If he does not do so, summary judgment, if appropriate, shall be entered against him. Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc., 578 F.2d 1256, 1263 (8th Cir.1978). The Court finds that Kern has for the most part relied on his pleadings and that the proof he has offered is insufficient to raise a genuine issue of material fact. The Court further finds that on the basis of the facts stated in the Trustee's affidavit and the entire record, summary judgment is appropriate, and that as a matter of law the transfers were property of the Debtor or the estate within the meaning of the applicable provisions of the Bankruptcy Code.

---

2. The exhibit papers indicate this evidence is available, and the Court assumes that its omission is merely an oversight and that it could be authenticated by Berry.

3. Kern's affidavit is offered to support his continued assertions regarding this Court's lack of personal jurisdiction. His affidavit of April 22, 1983, which is more responsive to the issues before the Court, was not timely filed. See the Court's Order of March 4, 1983.

■ The second issue raised by this motion is whether or not the Debtor was insolvent at the time of the pre-petition transfers.[4] For purposes of avoiding a preferential transfer, 11 U.S.C. § 547(f) creates a presumption of insolvency for the 90 days immediately preceding bankruptcy. This means that although the burden of persuasion regarding insolvency remains with the Trustee, the party against whom the presumption exists must come forward with some evidence to rebut it. *National Buy-Rite,* 7 B.R. at 410, 3 C.B.C.2d at 435. Kern has offered no evidence to rebut the presumption; he has merely alleged the Debtor's solvency, claiming, *inter alia,* that the Debtor owned contract rights, accounts receivable, real property and other assets in excess of its liabilities.

■ Because of the presumption of § 547(f), it is unnecessary for the Trustee to present evidence of the Debtor's insolvency where, as here, the creditor has not come forward with evidence of solvency. *Ellenberg v. DeKalb County, Georgia (In re Maytag Sales & Service, Inc.),* 23 B.R. 384, 386 (Bkrtcy.N.D.Ga.1982). Here, however, the Trustee has offered the affidavit of Berry which states that the Debtor was insolvent for at least 45 days prior to the filing of the petition, which would encompass the dates on which the pre-petition transfers were made. The Court finds that there is no genuine issue of material fact regarding the insolvency of the Debtor during the pre-petition preference period and that the Trustee is entitled to summary judgment on this point.

■ Kern states that the Trustee has the burden of proving by a preponderance of the evidence every essential element of a preference. This is a correct statement of the law, *In re Lucasa International, Ltd.,* 13 B.R. 596, 598 (Bkrtcy.S.D.N.Y.1981); but applies only to the pre-petition transfers, as the requirements of § 547(b) do not apply to the avoidability of the post-petition transfers. *See* 4 *Collier on Bankr.* ¶ 549.02

(15th ed. 1979). The Court finds that the Trustee has met this burden. The affidavit of Berry specifically avers the existence of each element necessary to constitute an avoidable preference under § 547(b), only one of which, insolvency, Kern has attempted to refute. In addition, the pleadings, affidavits and other evidence in the record of this proceeding and the other records and files in this case which the Court may judicially notice, 6 Moore's Fed.Prac. ¶ 56.11 (2d ed. 1982); *Chandler v. O'Bryan,* 311 F.Supp. 1121 (D.Okl.1969) *rev'd on other grounds,* 445 F.2d 1045 (10th Cir.1971), *cert. denied,* 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241, are further proof that the elements of § 547(b) are present: the transfers were made to Kern, a creditor who filed a proof of claim, evidencing the antecedent nature of the debt; the transfers were made within 90 days before the petition was filed and while the Debtor was insolvent, as determined by the Court; and the records indicate that Kern received a disproportionate return on his debt as compared to other creditors. With regard to the post-petition transfers, the record clearly shows that the requirements of § 549(a) have been met. The transfers were not authorized by the Code or the Court: Kern does not argue otherwise.

■ Therefore, the Court holds as a matter of law that the transfers were avoidable preferences under § 547(b) and § 549(a), and may be recovered unless one of the exceptions to the Trustee's avoiding power is applicable.

The Trustee contends that the facts of this·case "do not support any of the exceptions of 11 U.S.C. § 547(c)" and Berry's affidavit avers that "the transfers were made for and on account of an antecedent debt to Kern." Kern, however, argues that §§ 547(c)(1) and (2) are applicable and prevent the Trustee's recovery. The Court notes again, however, that § 549(a), not § 547(b), governs the avoidability of the post-petition transfers. Section 549(a) al-

---

4. Insolvency is relevant only to pre-petition transfers. Section 549(a) does not require the trustee to prove insolvency in order to avoid post-petition transfers. *See* 4 *Collier on Bankr.* ¶ 549.02 (15th ed. 1979).

lows the trustee to avoid transfers of the property of the estate after the commencement of the case, subject to certain exceptions. The only exception which is relevant here is found in § 549(b). This provision precludes recovery of transfers that occur in an involuntary case, after commencement of the case but before the order for relief is entered, to the extent of post-petition value provided by the transferee, but not including either the satisfaction or securing of a pre-petition debt. Kern has not raised this defense except to the extent that it may mirror the "new value" exception of § 547(c)(1). However, consistent with this Court's holding set forth below concerning the absence of any new value given in exchange for the Debtor's transfers to Kern, the Court finds that § 549(b) will not, as a matter of law, prevent the Trustee's recovery of the post-petition transfers.

This leaves for consideration the applicability of §§ 547(c)(1) and (2) to the pre-petition transfers. Section 547(c)(1) exempts from preferential attack transfers that are intended by both debtor and creditor to be and in fact are contemporaneous exchanges for new value given to the debtor. New value is defined as money or money's worth in goods, services or new credit, but does not include an obligation substituted for an existing obligation. 11 U.S.C. § 547(a)(2). New value has been interpreted to require enhanced value to the debtor's estate. *In re Duffy,* 3 B.R. 263, 266 (Bkrtcy.S.D.N.Y. 1980). The key factor here is whether the transfers were exchanged for new value or whether they were in payment of an existing, and therefore antecedent, debt. Kern maintains that new value was given in that: "At approximately the same time as the alleged transfers occurred, Kern and his agent began to help the debtor in his business, pay his taxes and mortgage payments and help develop his business through Kern's contacts and skills. See attached lease agreement."

The lease to which Kern refers, dated July 14, 1981, is between Kern and Kennesaw Mint, Ltd., not the Debtor, Kennesaw Mint, Inc. It provided for Kennesaw Mint, Ltd., to collect rents due from the Kennesaw Mint Building, pay certain expenses and pay over any balance to Kern's attorney, who was to escrow the annual first mortgage payments and to apply any balance remaining to the debt of the Debtor, Kennesaw Mint, Inc., to Kern.

The lease provides no evidence that any new value was given to the Debtor's estate, nor is there any evidence of Kern's other allegations. The facts here are that Kern paid the debtor approximately $200,-000 in advance for the purchase of silver in June of 1981. As the silver was not delivered, the debtor became indebted to Kern for that amount, and the record shows that the transfers were repayments toward that antecedent debt. There is no evidence that anything of additional value was received from Kern that could be regarded as augmenting the estate for the benefit of all creditors so as to offset the payments that were made. Absent the grant of new value, the contemporary exchange defense must fail. *In re Rustia,* 20 B.R. 131, 9 B.C.D. 6, 8 (Bkrtcy.S.D.N.Y.1982). For these reasons, the Court holds that the new value exception of § 549(b) will not apply to preclude the Trustee's recovery of the post-petition transfers.

Section 547(c)(2) provides that the trustee may not avoid a transfer to the extent that it was (A) in payment of a debt incurred in the ordinary course of business of the debtor and transferee; (B) made not later than 45 days after such debt was incurred; (C) made in the ordinary course of business of the debtor and transferee, and (D) made according to ordinary business terms. The purpose of this section is to insulate ordinary trade credit that is kept current. Levin, "An Introduction to the Trustee's Avoiding Powers," 53 Am.Bankr.L.J. 173, 186 (Spring, 1979). This exception was enacted because, under the Bankruptcy Act, a preference could not be avoided unless the trustee could prove the creditor has reasonable cause to believe the debtor was insolvent, thus protecting most ordinary course payments which would normally not create a suspicion of insolvency. However, with

the presumption of insolvency in the new Code, a special provision to protect such payments was required. *In re Brown,* 20 B.R. 554, 9 B.C.D. 192, 193 (Bkrtcy.S.D.N.Y. 1982).

Kern alleges that he "wired money to the debtor for the purchase of silver" and "when the debtor was unable to send the silver at the price requested, the debtor sought to send the silver's worth in 45 days." Kern's affidavit avers that:

"Before funds were transferred to Georgia, I received ... confirmation that a contract for 20,000 ounces of silver had been purchased by Mr. Berry which silver was designated for me. However, after money had been transferred by wire to Mr. Berry in Georgia delivery was not received, I found that Mr. Berry had failed to pay for the silver contract when payment was due and the silver was sold to another. As soon as I was informed that the 20,000 ounces of silver was sold to another, I immediately flew to Georgia to find Mr. Berry."

■ The Court merely states the obvious in finding that Kern's own evidence shows that the factual situation here is outside the ordinary course of business of the parties. The ordinary course of business of the Debtor was refining and selling precious metal. Upon receipt and payment of Kern's check, the Debtor became liable to ship the full amount of silver. His subsequent series of repayments, although styled in Kern's pleadings as an attempt to send the silver's equivalent in money or money's worth, were in payment of an antecedent debt. *See In re Bowen,* 3 B.R. 617, 6 B.C.D. 254 (Bkrtcy.E.D.Tenn.1980). The transfers were made after shipment to Kern was overdue. This supports the conclusion that they were simple preferences rather than ordinary course of business dealings. *See Gold Coast Seed Co. v. Beachner Seed Co. (In re Gold Coast Seed Co.)* 24 B.R. 595, 10 B.C.D. 202 (Bkrtcy. 9th Cir.1982).

■ Finally, Kern's contention that it would be a gross injustice to allow the Trustee to recover these transfers without pursuing the Debtor's other creditors to the extent that they benefited from Kern's $206,340.00 has no merit. The basic goal of the preference provisions of the Bankruptcy Code is to secure the equal distribution of the Debtor's assets among his creditors. *In re Duffy,* 3 B.R. at 266. *See* H.R.Rep. 95–595, 95th Cong., 1st Sess. 177–78 (1977), U.S.Code & Admin.News 1978, p. 5787. Kern cannot create a triable issue of fact by arguing to this Court a contradiction of the public policy underlying the bankruptcy legislation of this country.

An appropriate order is entered contemporaneously herewith.