**In re Ronald & Joyce ALBERS, Debtors.**

**Quentin M. DERRYBERRY, II, Plaintiff,**

**v.**

**Carl ALBERS, Defendant.**

**Bankruptcy No. 84–0218.**

**Related Case No. 84–00828.**

United States Bankruptcy Court, N.D. Ohio, W.D.

April 16, 1986.

Review Denied July 14, 1986.

Steven L. Diller, Van Wert, Ohio, for plaintiff.

Carl Albers, pro se.

## MEMORANDUM OPINION
## AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court for Trial on the Complaint To Recover Preferential Transfer. The Court has conducted numerous pre-trial conferences and hearings in this case, and has afforded the parties every opportunity to become familiar with the issues addressed in the Complaint. At Trial, the parties were afforded the opportunity to present any evidence and arguments they wished the Court to consider. The parties have also been afforded the opportunity to file post-trial arguments and respond to the arguments made by the opposing party. The Court has reviewed the evidence, the arguments, and the entire record in this case. Based upon that review and for the following reasons the Court finds that judgment on the Complaint should be entered for the Plaintiff.

### FACTS

The Plaintiff in this case is the Trustee in the underlying bankruptcy proceeding. The Debtors in the underlying proceeding are husband and wife. The Defendant in this adversary proceeding is the father of the Debtor-Husband.

For approximately the last thirty years preceding the commencement of this litigation, the Defendant has been engaged in general farming. Those activities have included both grain and livestock operations. At some time during 1977, the Defendant entered into an arrangement with the Debtor-Husband and two of his other sons for the continuation of the Defendant's hog operation. The terms of this arrangement and the date upon which it went into effect are not clear, inasmuch as the arrangement was never reduced to writing. However, the evidence reflects that the sons were to

assume responsibility for the entire operation, including the possession, care, maintenance, and disposition of the hogs. It also appears that the operation was to be conducted on premises owned by the Defendant, and that the sons would be required to pay rent for the facilities they used. They were also to pay for the utilities which serviced those facilities.

At the time this arrangement was entered into, the sons came into possession of the hogs that were to be used in the operation. The record does not clearly reflect whether these animals were purchased by the sons from an independent party, purchased from the Defendant and charged to the son's account, or loaned by the Defendant for use in the operation. As with the arrangement for the use of the facilities, there is no documentary evidence which establishes the source of the hogs or the terms under which they were acquired. However, it is clear that the sons had the right to possess and dispose of the hogs without prior approval from the Defendant.

At some time shortly after the commencement of this arrangement, the two brothers discontinued their involvement in the operation of the hog farm. The reasons for their leaving is unclear. As a result of their departure, the Debtors undertook to operate the enterprise on their own. The record reflects that the operation required the Debtors to purchase on credit many of the materials required to sustain the farm. Such obligations included debts for feed, rent, utilities, and other necessities. A portion of these debts were advances by the Defendant. They also included a loan from the St. Henry Bank, the obligation for which is represented by a promissory note executed by the Debtors and the Defendant.

The record shows that the Debtors were unable to operate the hog farm at a profit in the years which immediately preceded the filing of their petition. The absence of profitability is reflected on the federal income tax returns that were filed by the Debtors for those years. In addition, the evidence demonstrates that the Debtors became delinquent in their rental payments to the Defendant, and were required to seek additional advances from the Defendant and their other suppliers. The testimony indicates that throughout this period, the Defendant maintained a working relationship with the Debtors and was continuously apprised of the operation's circumstances. He did not, however, participate in the day-to-day activities.

On or about December 20, 1983, the hogs in question were returned to the Defendant. The characterization of this return and the circumstances under which it occurred are the subjects of major dispute between the parties in this case. As will be more fully developed, the Trustee contends that the hogs were sold to the Defendant, and that the proceeds of that sale were used to offset the outstanding obligation. The Defendant contends that he gradually assumed control of the operation, and that this assumption merely returned to him possession of property that was already his. As reflected in the Debtors' schedules, the value of this alleged transfer was Seventy-one Thousand Eight Hundred Twenty and no/100 Dollars ($71,820.00). It appears that the Debtors terminated their involvement in the hog operation as of the time of the transfer.

On May 16, 1984, the Debtors filed their joint voluntary Chapter 7 Petition with this Court. In the schedules which accompany that Petition, the Debtors list no creditors with priority and no creditors holding security. The only debts listed are unsecured obligations in the amount of One Hundred Seventy-four Thousand One Hundred Eleven and 67/100 Dollars ($174,111.67). Those debts are primarily for obligations incurred as a result of the hog operation. The largest creditor is the Defendant, with a post-transfer debt of Sixty-nine Thousand Three Hundred Twenty-six and 17/100 Dollars ($69,326.17). While the schedules also reflect one other pre-petition transfer of approximately Six Thousand Five Hundred and no/100 Dollars ($6,500.00) in value, the Trustee has not sought to recover that transfer in this or any other proceeding.

The Debtors listed assets of approximately One Thousand Four Hundred Eleven and no/100 Dollars ($1,411.00) in value.

In an effort to collect assets for the estate, the Trustee has filed the action which is presently before the Court. In that action, he seeks to recover the transfer of hogs pursuant to the provisions of 11 U.S.C. Section 547(b). Specifically, he alleges that the transfer was preferential as to the Defendant as a result of the fact that the Defendant was an insider of the Debtors, and that the transfer enabled the Defendant to receive more than he would have received in a Chapter 7 liquidation had the transfer not been made. In support of this allegation, the Trustee has offered the testimony of the Debtor which was given at the First Meeting of Creditors conducted pursuant to 11 U.S.C. Section 341. That testimony indicated that the Debtors sold the hogs to the Defendant in partial repayment of the obligation he was owed. The Trustee has also offered, among other documents, a document which appears to be an account ledger kept by the Defendant. This ledger bears entries which reflect the Debtors' account with the Defendant for the year 1983. The ledger shows that as of November 1983, the Debtors were indebted to the Defendant in the amount of One Hundred Forty-six Thousand One Hundred Sixty-one and 07/100 Dollars ($146,161.07). The ledger also bears the statement, "Bought hogs back 71,820.00", and the statement, "Ron owes us 69,362.17". The latter statement appears after a credit had been given to the obligation as it stood at the end of November, 1983. The arithmetic on the ledger is not accurate.

The Defendant contests this action, arguing that the transfer was not preferential, and that any transfer only returned to him property that was already his. In support of his defense, the Defendant has offered documents which are intended to show that he was the original purchaser of the hogs. Those documents include invoices from the purchase of hogs and copies of checks drawn on his personal account made payable to various entities that provided materials to the operation. It should be noted that checks were all dated during the period May through August of 1977. It should also be noted that the invoices are addressed to "Carl Albers & Son". The Defendant disavows any knowledge of the account ledger offered by the Trustee.

## LAW

Prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (1984), the provisions of 11 U.S.C. Sections 101 and 547(b) stated in pertinent part:

Section 101 Definitions. In this title ...

(25) "insider" includes—

(A) if the debtor is an individual—

(i) relative of the debtor or of a general partner of the debtor ...

(26) "insolvent" means—

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title ...

(34) "relative" means individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship with such third degree ...

(40) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest ...

Section 547 Preferences ...

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title;

The pre-amendment versions of these sections are applicable to this adversary proceeding, inasmuch as the underlying Chapter 7 petition was filed prior to the effective date of the amendments. *See,* P.L. 98–353 Section 553(a).

 Under the provisions of 11 U.S.C. Section 547(b), a trustee may avoid any transfer of property which was made by a debtor to a creditor on account of an antecedent debt which existed prior to the transfer if 1) the creditor was an insider of the debtor, 2) the creditor had reasonable cause to believe that the debtor was insolvent at the time of the transfer, 3) the transfer occurred within one year prior to the filing of the petition, 4) the debtor was insolvent at the time of the transfer, 5) the transfer enabled the creditor to receive more than would have been received in a Chapter 7 liquidation had the transfer not been made. *See, Hunter v. Pool Pals Mfg., Inc. (In re Benson),* 57 B.R. 226 (Bkcy.N.D.Ohio 1985), *Allison v. First National Bank & Trust Co. (In re Damon),* 34 B.R. 626 (Bkcy.D.Kan.1983), *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bkcy.S.D.N.Y.1982). Reasonable cause to believe the debtor is insolvent can

be demonstrated by showing that a defendant was or should have been aware of facts that would lead a prudent businessman to maintain such a belief. *Hunter v. Pool Pals Mfg., Inc.,* supra, *Bernstein v. Alpha Associates, Inc. (In re Frigitemp Corp.),* 34 B.R. 1000 (S.D.N.Y.1983). The purpose of the preference provision is to secure an equitable distribution of a debtor's assets among all his creditors. *Cohen v. Kern (Matter of Kennesaw),* 32 B.R. 799 (Bkcy. N.D.Ga.1983). Once a transfer is avoided under 11 U.S.C. Section 547(b), a trustee may recover the property or the value of the property from the entity which received the transfer. *See,* 11 U.S.C. Section 550.

In the present case, the first determination which must be made involves the question of whether or not an avoidable transfer occurred. This question is the primary focus of an action to avoid a preferential transfer and is the most seriously disputed issue in this case. As previously indicated, the Trustee contends that the hogs were transferred by the Debtors to the Defendant as partial repayment of the obligation owed to the Defendant. The Defendant maintains that his assumption of control over the hog operation merely returned property that he already owned.

The absence of documentation as to the terms of the arrangement between the Debtors and the Defendant makes difficult the process of determining which of the asserted positions is valid. However, as will be explained, the validity of either position is not, in and of itself, dispositive of this issue. Rather, the testimony and the evidence demonstrate independent and sufficient grounds upon which to find that a transfer occurred, regardless of which version of the facts is believed.

 A review of the statement of affairs filed by the Debtors finds, in response to question eleven (11), "What repayments on loans in whole or in part have you made during the year immediately preceding the filing of the original petition", the statement "Hogs sold to Carl Albers—December 20th, 1983 at Market Price and Applied

to Repayment of Loan." A review of the ledger offered by the Trustee indicates that the Defendant bought back certain hogs and offset the obligation by the amount of that purchase. This evidence is corroborated by the testimony of the Debtors at the first meeting of creditors, wherein they indicated that the hogs were sold to the Defendant in an effort to partially repay the debt. There has been no evidence which discredits the statement of financial affairs or the Debtors' first meeting of creditors testimony. Despite the fact that the Defendant denies any knowledge of the ledger, this other evidence is sufficient to establish the fact that the Debtors conveyed to the Defendant the hogs which were in the Debtors' possession. It is, however, interesting to note that the final figure set forth on this ledger is the same figure which is scheduled as the obligation owed to the Defendant. In the absence of relevant and concrete evidence to the contrary, this Court must conclude that there was a conveyance of the hogs by the Debtors to the Defendant in partial repayment of the debt. It must also be concluded that this conveyance constitutes a transfer for purposes of 11 U.S.C. Section 547(b).

The Debtor has asserted that this transfer merely amounted to a recovery of his own property. In support of this defense, he has offered certain documents in an effort to show that he was the purchaser of the supplies which were used to begin the operation. Initially, it should be pointed out that these documents are ineffective to accomplish the intended purpose, inasmuch as the inference which may be drawn from the documents is not wholly inconsistent with the theory that the Defendant advanced the Debtors cash and materials for the operation. Furthermore, the weight of the evidence suggests that the Debtors were always regarded by the parties as the owners of the hogs, and were, in fact, the owners of said hogs.

However, even if the Court were to accept his contention that the hogs actually belonged to him, the validity of the Defendant's position would not negate the finding that a transfer occurred. The testimony of both the Debtors and the Defendant clearly indicates that the Debtors were the parties that had the exclusive right to possess, control and dispose of the animals. At the time the arrangement went into effect, the right to possession passed from the Defendant to the Debtors. The conveyance of this right, in and of itself, created a debtor-creditor relationship by virtue of the fact that the Debtors had the exclusive right to possess property of the Defendant. When this right of possession was returned, the Defendant effectively received possession of the animals. The return of possession of property is, notwithstanding the actual ownership thereof, a transfer of property. The reasoning for this theory is founded on the principle that a transfer of anything of value over which a debtor has immediate control constitutes a transfer that may be avoided under 11 U.S.C. Section 547(b). *See, Merril v. Abbott (In re Independent Clearing House Co.),* 41 B.R. 985 (Bkcy.D.Utah 1984). Therefore, it must be concluded that, for the sake of argument, even if the Defendant was the owner of the hogs, his assumption of the right to possess, control, and dispose of the animals was a transfer by the Debtors which may be avoided under 11 U.S.C. Section 547(b).

A review of the testimony and exhibits finds that all other elements of a preference are present. To the extent that the Court has not already resolved the evidentiary issues, the facts which establish these elements are not in serious dispute. Specifically, it is readily apparent that the Defendant is an insider of the Debtors by virtue of the parent-child relationship. While the existence of an insider relationship is not necessarily limited to those relationships set forth in 11 U.S.C. Section 101(25), *see, Hunter v. Pool Pals Mfg., Inc.,* supra, the provisions of Section 101 clearly indicate that the Defendant is a relative of the Debtors, 11 U.S.C. Section 101(34), and that such a relative is an insider of the Debtors. 11 U.S.C. Section 101(25). Therefore, it must be concluded that the Defendant is an insider.

**212**

Equally apparent is the fact that the transfer in question occurred within the one year period that preceded the filing of the Debtors' petition. The statement of affairs and the Debtors' first meeting of creditors testimony reflect that the transfer occurred on or about December 20, 1983, well within the one year period. While the Court finds such evidence to be dispositive of the issue, the Defendant's testimony as to his assumption of the operation also reflects that the assumption occurred within the one year period. Therefore, regardless as to the circumstances of the transfer, it must be concluded that the time element set forth in 11 U.S.C. Section 547(b)(4)(B) has been satisfied.

A review of the schedules and testimony finds that as of the filing of the petition, the Debtors had a total of One Hundred Seventy-four Thousand One Hundred Eleven and 67/100 Dollars ($174,111.67) in obligations and approximately One Thousand Four Hundred Eleven and no/100 Dollars ($1,411.00) in assets. If the transfer had not been made, the Debtors would have had approximately Seventy-three Thousand Two Hundred Thirty-one and no/100 Dollars ($73,231.00) in assets, and Two Hundred Forty-five Thousand Nine Hundred Thirty-one and 67/100 Dollars ($245,931.67) in liabilities. Since it appears that the Debtors did not incur any additional debt subsequent to the transfer, and, with one minor exception that would not alter the outcome of this case, did not transfer any other property, it is apparent that at the time of the transfer the sum of their assets was significantly less than the sum of their obligations. Since such a situation meets the definition of insolvency under 11 U.S.C. Section 101(26), it must be concluded that the Debtors were insolvent at the time the transfer was made.

As has already been indicated, at the time of the transfer the Debtors had outstanding obligations of approximately One Hundred Seventy-four Thousand and no/100 Dollars ($174,000.00). If the transfer had not been made, the Debtors would have had obligations totalling approximately Two Hundred Forty-five Thousand and no/100 Dollars ($245,000.00) (excluding the undisputed transfer). The total obligation to the Defendant was approximately One Hundred Forty-six Thousand and no/100 Dollars ($146,000.00). As a result of the transfer, the Defendant received approximately fifty percent (50%) of the obligation that was owed. If the transfer had not been made and the Debtors' estate been administered under Chapter 7, the Defendant would have received, in the absence of exemptions, approximately thirty percent (30%) of his obligation. Since the transfer enabled the Defendant to receive a greater percentage of the obligation than he would have received under a Chapter 7 liquidation, it must be concluded that the requirements of 11 U.S.C. Section 547(b)(5) have been met.

A review of the testimony and exhibits finds that the Defendant has admitted to being a creditor of the Debtors, and that the terms of their arrangement and subsequent debts were not reduced to writing. The evidence also reflects that the Defendant did not take a security interest in the Debtors' property and did not file any financing statements. Furthermore, the schedules and the ledger reflect that the obligations arose prior to the time of the transfer. This evidence is corroborated by the Defendant's testimony that the Debtors did not consistently pay rent as it became due, and that he was required to make continuous advances of money and material to maintain the operation. Based upon this evidence, it is apparent that the Defendant was a creditor of the Debtors, and that the obligations which created the debtor-creditor relationship arose prior to the time of the transfer. Accordingly, it must be concluded that the transfer was made to a creditor on account of an antecedent debt, and that the elements set forth in 11 U.S.C. Section 547(b)(1) and (2) have been satisfied.

The final element which must be shown is that the Defendant had reasonable cause to believe that the Debtors were insolvent at the time of the transfer. As

previously indicated, reasonable knowledge may be demonstrated by circumstances which would lead a prudent businessman to maintain a belief that a debtor was insolvent. *Hunter v. Pool Pals Mfg., Inc.*, supra. In the present case, there were sufficient facts available to the Defendant from which he knew or should have known that the Debtors were insolvent. Specifically, the Debtors were conducting a hog farm operation on the Defendant's premises, an operation which had previously been conducted by the Defendant himself. The Defendant testified that he was familiar with the nature of such an operation and was cognizant of the difficulties in making it profitable. The Debtor-Husband testified he and the Defendant had a working relationship, and that the Defendant kept an active interest in the operation. In addition, the Defendant was a co-obligor with the Debtors on a promissory note, a note that was in serious arrears for a considerable period of time. Furthermore, the testimony reflects that the Defendant was continually having to make advances of cash and grain to sustain the operation. The testimony also reflects that the rent for the facilities was not being promptly paid. This testimony is supported by the magnitude of the debt owed to the Defendant, and the fact that such a large debt could not arise between these parties without creating some question as to the Debtors' ability to profitably operate the farm. These factors, when viewed in the context and nature of the insider relationship, clearly indicate that there were facts from which the Defendant knew or should have known that the Debtors were in serious financial difficulties. As a result, the Defendant had reasonable cause to believe that the Debtors were insolvent at the time of the transfer. Accordingly, it must be concluded that the requirements of 11 U.S.C. Section 547(b)(4)(B)(ii) have been met.

Based upon the foregoing analysis, the Court must conclude that the evidence and testimony sufficiently demonstrate all the facts which must be shown in order to prevail in the action alleged in the Complaint. The Trustee has shown that there was a transfer to the Defendant of property which was made on account of an antecedent debt. He has also shown that the Defendant was an insider of the Debtors, that he had knowledge of the insolvency, and that the transfer occurred within one year prior to the filing of the petition. Finally, the evidence has shown that the Debtors were insolvent at the time of the transfer, and that the transfer enabled the Defendant to receive more than he would have received had the transfer not been made. While the Defendant has offered certain defenses to this action, the weight of the evidence is insufficient to either establish a legal defense or overcome the evidence presented by the Trustee. Accordingly, it must be concluded that judgment should be entered for the Trustee, and the transfer should be avoided pursuant to the provisions of 11 U.S.C. Section 547(b), and that the Defendant is liable to the Trustee in the amount of Seventy-one Thousand Eight Hundred Twenty and no/100 Dollars ($71,820.00).

In reaching these conclusions the Court has considered all the evidence and arguments of the parties, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that Judgment be, and is hereby, entered for the Plaintiff-Trustee in the amount of Seventy-one Thousand Eight Hundred Twenty and no/100 Dollars ($71,820.00).

It is FURTHER ORDERED that the transfer be, and is hereby, held as VOID.