**In re BELL & BECKWITH, Debtor.**

**Patrick A. McGRAW, Trustee, Plaintiff,**

**v.**

**Carl ALLEN, et al., Defendants.**

**Bankruptcy No. 84–0097.**
**Related Case: 83–0132.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Aug. 1, 1986.

Fuller & Henry, Toledo, Ohio, for plaintiff.

William F. Snyder, Cleveland, Ohio, John J. Callahan, Co-Counsel, Toledo, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Second Amended Complaint filed by the Plaintiff in the above entitled adversary action. The Court conducted a Trial in this case, at which it heard the evidence and arguments presented by the parties. The parties have filed both post-trial arguments and proposed findings of and conclusions of law. The Court has reviewed the evidence offered at Trial, including both the testimony and the exhibits received into evidence. The Court has also reviewed the arguments of counsel, and has considered the proposed findings of fact and conclusions of law. Based upon its review and for the following reasons, the Court finds that judgment should be entered for the Plaintiff on Counts One, Twelve, and Thirteen. The Court also finds that partial judgment should be entered for the Plaintiff on Count Eight. The Court further finds that

the remaining Counts of the Second Amended Complaint should be dismissed.

## FACTS

The Plaintiff in this action is the Trustee for the liquidation of the Debtor in the underlying bankruptcy proceeding. The Defendants Carl and Mae Jean Allen are husband and wife. The Defendant Carl Allen Stables is a proprietorship owned by Carl Allen. The Defendant Country Boy Estates is a partnership whose ownership will be explained later in this Opinion. Unless otherwise indicated, the term "Defendant" will hereinafter refer solely to Carl Allen.

Prior to the initiation of liquidation proceedings, the Debtor was a partnership which was doing business as a stock brokerage. At some time beginning in approximately 1972, the managing partner of the brokerage, Edward P. Wolfram, Jr. (hereinafter Wolfram) began a course of conduct, whereby he systematically diverted funds held in customer accounts into accounts over which he had exclusive control. Those accounts were held in the name of various persons or entities, including his wife, Zula Wolfram. Many of these entities were created for or were affiliated with Wolfram's disposition of the diverted funds. However, on February 5, 1983, as the result of an investigation by the Securities and Exchange Commission, liquidation proceedings were initiated against the Debtor under the provisions of 15 U.S.C. Section 78aaa *et seq.* Wolfram was subsequently indicted and convicted of several criminal offenses relating to his unlawful diversions.

During the course of his unlawful activities, Wolfram used the diverted funds to become involved in a variety of diversified enterprises. Among these ventures was Wolfram's involvement with the Defendant, a person engaged in the business of training, racing, and maintaining standardbred horses. The evidence reflects that when the relationship between Wolfram and the Defendant began, it only involved their mutual ownership of several horses.

However, as the parties became better acquainted, they entered into further arrangements for the purchase, maintenance, and racing of additional animals. The terms of these multifaceted arrangements customarily called for Wolfram to provide the funds with which a horse would be purchased. The Defendant would receive a one-half ownership interest in the animal, thereby creating a debt to Wolfram for one-half of the purchase price. The Defendant would be able to satisfy this obligation through his efforts to train, race, and maintain each animal so purchased. These obligations and the efforts rendered thereto were to be periodically credited to the account ledgers kept by the Defendant at his place of business. Such ledgers were kept for each animal under the Defendant's care. In addition to these arrangements, it appears that the parties were to share equally all expenses and profits associated with the ownership of these animals. Although the terms of the parties' relationship occasionally deviated from this format, it appears that it served as the pattern for a majority of their purchases. The terms of these arrangements were never reduced to writing.

At some time later, the parties formed a partnership known as the Country Boy Estates. This partnership involved the purchase of a parcel of real estate in Ocala, Florida, which was used and developed by the Defendants for a continuation of the parties' horse racing venture. The evidence indicates that Wolfram supplied the funds used to make the down-payment on this property, and that a mortgage was executed by the parties for the remainder of the purchase price. Each of the Defendants, Carl and Mae Jean Allen, received a one-fourth ownership interest in the property. The remaining one-half interest was shared equally by Edward and Zula Wolfram. Although the Allens' receipt of their one-fourth interests created a debt to Wolfram for their share of the downpayment, Wolfram agreed that this obligation could be satisfied by their operation and improvement of the facilities. Accordingly, the

Defendants managed the horse facilities during the period which followed the purchase. This included the care, maintenance, and racing of the partnership's horses. It also included the same services to other horses boarded at these stables which were owned by parties who are otherwise unrelated to this proceeding.

Periodically during the pendency of their relationship, Wolfram transferred funds from the Debtor's account at Ohio Citizens Bank in Toledo, Ohio, to an account owned by the Defendant at the Sun Bank of Ocala, Florida. It appears that the transfers were made for the purpose of providing for the expenses of the business and for satisfying, in part, the ongoing debt which was accumulating against Wolfram's ownership interest. A review of the evidence in this liquidation proceeding finds that the amounts transferred were debited, on the books of the Debtor, from the accounts controlled by Wolfram. Included in these transfers were the following:

| | |
|---|---|
| February 17, 1982 | $65,000.00 |
| March 16, 1982 | $100,000.00 |
| April 13, 1982 | $140,000.00 |
| April 23, 1982 | $110,000.00 |
| May 19, 1982 | $70,000.00 |
| June 21, 1982 | $60,000.00 |
| July 8, 1982 | $40,000.00 |
| July 21, 1982 | $20,000.00 |
| August 16, 1982 | $67,000.00 |
| October 13, 1982 | $57,500.00 |
| October 14, 1982 | $30,000.00 |
| November 15, 1982 | $30,000.00 |
| December 21, 1982 | $40,000.00 |
| February 1, 1983 | $260,000.00 |
| February 3, 1983 | $240,000.00 |
| Total | $1,329,500.00 |

However, on or about October 15, 1982, the Defendant executed a promissory note in favor of Wolfram in the amount of Three Hundred Ninety-three Thousand Five Hundred and no/100 Dollars ($393,500.00) with interest to accrue at the rate of eight percent (8%) from the date of execution. The note was payable one (1) year after the date it was signed. It appears that the note was executed as a result of the Defendant's growing concern over the size of the debt to Wolfram for their continuing purchases. It also appears that this note represented the Defendant's portion of the price for all horses purchased in 1982.

Subsequent to the initiation of liquidation proceedings, both Zula and Edward Wolfram assigned all assets and interests in property to the Debtor. In turn, these assets and interests were assigned to the Trustee to be used for the benefit of creditors in the Debtor's liquidation. Included in these assignments were Wolfram's interest in the partnership, the horses, and the ranch. In an effort to liquidate the assets of the estate, the Trustee sold to the Defendant his assigned interest in several of the horses which had heretofore been jointly owned by the Defendant and Wolfram. The terms of the contract of sale required the Defendant to tender to the Trustee One Million and no/100 Dollars ($1,000,000.00) of the total purchase price of One Million Two Hundred Seventy Thousand Four Hundred Sixteen and no/100 Dollars ($1,270,416.00) at the time of the sale. The remainder would be withheld by the Defendant as an offset against the expenses incurred by the Defendant since the commencement of the case. However, the Defendant was required to account for those expenses within thirty (30) days from the date of the contract so as to insure that all of the retained purchase price had been properly earned. It does not appear that this accounting was offered to the Trustee until just prior to the commencement of Trial.

In addition to the foregoing facts, the Defendant had a customer account with the Debtor in his own name. At the time liquidation proceedings began, there were both cash and securities totaling Two Hundred Sixty Thousand Forty-two and 42/100 Dollars ($260,042.42) in this account. The evidence indicates that the transfer of Two Hundred Sixty Thousand and no/100 Dollars ($260,000.00) which occurred on February 1, 1983, was a return to the Defendant of the funds which were previously in his account. It appears that Wolfram was aware of the impending liquidation, and that he affected the transfer so as to enable the Defendant to have possession of

the funds in his account before the liquidation began.

The evidence also reflects that the Defendant has not made any payments on the promissory note which was executed on October 15, 1982. Although there appears to have been some dispute as to the amount of the original note, the Defendant has conceded that the proper amount is Three Hundred Ninety-three Thousand Five Hundred and no/100 Dollars ($393,500.00). This amount represents exactly one-half of the purchase price for the four horses purchased by the parties during 1982. As of the day of Trial, the amount owed on the note was approximately Four Hundred Eighty-nine Thousand Seven Hundred Fifty-one and 17/100 Dollars ($489,751.17).

As a part of his effort to liquidate the assets of the estate, the Trustee made a demand for payment of the amounts allegedly owed by the Defendant on the promissory note and as a result of the funds advanced by Wolfram for their joint enterprises. He has also demanded a return of the transfers previously set forth. In addition, the Trustee requested the accounting which was to be made relative to the contract for the sale of the Trustee's interests in certain horses. The Defendant did not satisfy any of those demands. Accordingly, the Trustee initiated the action which is presently before the Court.

The Complaint upon which Trial was held was the Second Amended Complaint filed by the Trustee. In that pleading, the Trustee asserts fourteen Counts against the Defendants. Counts One, Two, Three, Four, Five, and Six each allege causes of action under the provisions of 11 U.S.C. Section 548 and 11 U.S.C. Section 550, to avoid the aforementioned transfers which total One Million Three Hundred Twenty-five Thousand Five Hundred and no/100 Dollars ($1,329,500.00). Each Count sets forth an action based upon various subsections within that particular statute. Specifically, Count One alleges the avoidability of the transfers under Section 548(a)(1), Count Two proceeds under Section 548(a)(2)(A)

and (B)(i), Count Three proceeds under Section 548(a)(2)(A) and (B)(ii), Count Four proceeds under Section 548(a)(2)(A) and (B)(iii), and Count Five proceeds under Section 548(b). Count Six alleges the avoidability of the transfers on the basis that they were made to defeat the purposes of the Securities Investor Protection Act. No specific statutory authority is asserted in Count Six.

Count Seven asserts an action to avoid, as a fraudulent conveyance, the aforementioned transfers pursuant to the provisions of Ohio Revised Code Section 1336.01 *et seq.* Count Eight alleges the avoidability of the transfers on November 15, 1982, December 21, 1982, February 1, 1983, and February 3, 1983, under the provisions of 11 U.S.C. Section 547(b). Count Nine asserts an action for an accounting of the balance of the purchase price on the contract made by the parties for the sale of the Trustee's assigned interests in the horses. Counts Ten and Eleven assert actions for the imposition of a constructive trust over the assets of the partnership and any other assets which were acquired with funds provided by Wolfram. Count Twelve seeks a dissolution of the partnership and a winding up of its affairs. Count Thirteen is an action to collect on the promissory note executed by the Defendant on October 15, 1982. Finally, Count Fourteen is an action on "account" which alleges that the Defendant is liable to the Trustee in the amount of One Million Nine Hundred Twenty-two Thousand Six Hundred Fifty-four and 68/100 Dollars ($1,922,654.68). This liability is alleged to have arisen as the result of Wolfram's contributions to the partnership and a reconciliation of its affairs.

The Defendants have substantially denied the allegations set forth in each Count of the Second Amended Complaint. Although the Defendants' Answer to the original Complaint set forth certain counterclaims, those counterclaims have apparently been rescinded, inasmuch as they were not found in the Answer to the Second Amended Complaint. In defending

against the Trustee's present allegations, the Defendants have admitted that the transfers made by Wolfram were made with the intent to defraud the Debtor's customers. However, they assert that all transactions with Wolfram were conducted in good faith and without knowledge of Wolfram's unlawful activities. They also assert that Wolfram received equivalent value for the transfers in the form of services rendered to their business. The Defendants further argue that there was an annual forgiveness of any debt which may have been owed by the Defendant to Wolfram as a result of their transactions during any given year. Accordingly, the Defendants argue, the amounts owed on the "account" are substantially less than those asserted by the Trustee. Furthermore, the Defendants contend that the outstanding balances on the payment of the purchase price and the promissory note have been significantly reduced as the result of his continued services to what is presently the Trustee's share of the business. As to the action alleging a voidable preference, the Defendants contend that the transfers amounted to a return of funds which already belonged to the Defendants, and that the transfers were not made for the purpose of preferring the Defendants over other creditors. The Defendants finally contend that while they recognize the Trustee's fifty percent ownership interest in the property owned by the partnership, the action for a dissolution is moot. It is argued that inasmuch as the Defendant intends to purchase from the Trustee's interest in the property, no such dissolution is required.

In addition to these defenses, the Defendants have claimed, to the extent such claim is incorporated in the Answer, that the Trustee is indebted to him in the amount of One Hundred Seventy-five Thousand Six Hundred One and 03/100 Dollars ($175,601.03). This indebtedness arises from the Defendant's services to the Trustee's interest in the horses which have been rendered subsequent to the beginning of liquidation proceedings. This indebtedness also includes his services to the ranch and the expenses incurred by the business since

the execution of the assignment. As a result of this indebtedness and a setoff of this amount from that which is admittedly owed, the Defendants claim that they are indebted to the Trustee for only Three Hundred Seventeen Thousand Two Hundred Eighty-two and 94/100 Dollars ($317,282.94).

In support of the actions set forth in the Second Amended Complaint, the Trustee offered numerous documents which purport to demonstrate the multitude of transactions between Wolfram and the Defendant. Included in these documents are voluminous ledgers and schedules which were kept by the Defendants in their daily operations. These schedules purport to depict the accounts which were kept for each horse boarded at the Defendant's stables. It should be noted that the account ledgers were maintained by Mae Jean Allen, a person not formally trained in accounting practices or procedures. Also included in the Trustee's evidence were the Defendant's federal tax returns, the partnership's federal tax returns, deposition excerpts, bank statements, checks, and numerous other documents. However, further included in the Trustee's evidence was a compilation and analysis of all transactions which are alleged to have been involved in the parties' relationship. This compilation is an extensive and comprehensive review which was prepared by an accountant hired by the Trustee for the purpose of conducting such an analysis. The report sets forth the various aspects of the relationships between the Defendant and Wolfram, and is supported by a comprehensive collection of exhibits, including copies of checks, bank statements, ledgers, and other documents.

In support of their defense, the Defendants offered various exhibits, including their account statements from the Debtor, other ledgers and schedules, and additional documents which purportedly support their position in the case. The Defendants rely on these documents in their assertion that the amount owed on "account" is not as large as that claimed by the Trustee. In addition to the evidence which is intended

to prove their respective claims, the parties offered other evidence to support certain testimony given at Trial.

## LAW

### I

■ With regard to Count One of the Second Amended Complaint, the provisions of 11 U.S.C. Section 548 state in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such' obligation was incurred, indebted;

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

Under these provisions, a trustee may avoid any transfer of a debtor's property which occurs within one year prior to the filing of the Petition, and which was made with the intent to hinder, delay, or defraud creditors. *Reiber v. Baker (In re Baker)*, 17 B.R. 392 (Bkcy.W.D.N.Y.1982). When seeking to avoid a transfer under this provision, the trustee must be able to show that the transfer was accomplished with actual intent to defraud. *See, Toledo Trust Co. v. Peoples Banking Co. (In re Hartley)*, 52 B.R. 679 (Bkcy.N.D.Ohio 1985), *Varon v. Trimble, Marshall & Goldman (In re Euro-Swiss International Corp.)*, 33 B.R. 872 (Bkcy.S.D.N.Y.1983).

However, fraudulent intent of an agent of a debtor may be imputed to any transfers of the debtor's property made by the agent. *Freehling v. Nielson (In re F & C Services, Inc.)*, 44 B.R. 863 (Bkcy.S.D.Fla.1984), *Pirrone v. Toboroff (In re Vaniman International, Inc.)*, 22 B.R. 166 (Bkcy.E.D.N.Y. 1982). A general scheme or course of conduct that is designed to divert assets of a debtor without regard to the interests of creditors can constitute conduct from which intent to defraud can be found. *Freehling v. Nielson*, supra. If a transfer solely benefits a third party, such that the property is used to satisfy a debt owed by one other than the debtor, there can be no reasonably equivalent exchange received by the debtor in exchange for the transfer. *Gill v. Brooklier (In re Burbank Generators, Inc.)*, 48 B.R. 204 (Bkcy.C.D.Cal.1985).

If, however, a transferee is able to show that the debtor received in exchange for the transfer reasonably equivalent value, and if the transferee received the transfer in good faith, the transferee may retain the interest in property to the extent value was given. 11 U.S.C. Section 548(c). Although the transfer may have been made by the debtor to a third party, the transferee may retain the property under the provisions of 11 U.S.C. Section 548(c) to the extent the debtor actually received value for the otherwise avoidable transfer. *Butz v. Sohigro Service Co. (Matter of Evans Potato Co., Inc.)*, 44 B.R. 191 (Bkcy.S.D.Ohio 1984).

In reviewing the statutes involved in Count One, the Court notes that the provisions of Section 548(a)(1) do not raise a question as to whether or not a debtor received reasonable equivalent value in exchange for the transfer. All which is required in order to prevail under this section is a demonstration that the transfer was made with the intent to hinder, delay, or defraud creditors. If such intent can be shown in relation to a transfer, the provisions of the statute indicate that the transfer may be avoided. If, however, it can be shown that reasonable equivalent value was given, the provisions of Section 548(c)

permit a transferee to retain the transfer to the extent such value was given. In an action where these two provisions are brought into dispute, as has been done in this case, the question arises as to which party has the burden of proof as to whether reasonable value was given. Therefore, before this Court can determine the effect of the evidence presented by the parties, it must first be determined what must be shown in order to prevail in an action order Section 548(a)(1).

In an action brought under Section 548(a)(2)(A), it is incumbent upon the trustee to demonstrate that the debtor received less than reasonable equivalent value in exchange for the transfer. The absence of such value is made an expressed element of the cause of action. However, unlike Section 548(a)(2)(A), the provisions of Section 548(a)(1) do not require any showing as to the absence of equivalent value. All that is required is that the transfer have been made with the intent to defraud. If a trustee were able to demonstrate that such intent motivated a transfer, a transferee would then have the opportunity to invoke the protection afforded under Section 548(c) by showing that there was an exchange of equal value. Since the protection under Section 548(c) is not a part of the provisions which establish the requirements for avoiding a transfer, it appears that the existence of equivalent value operates as an affirmative defense to an action to avoid a fraudulent conveyance brought under Section 548(a)(1). Therefore, it must be concluded that a defendant has the burden of proof as to whether a debtor received reasonable equivalent value in a transfer which was made with the intent to hinder, delay, or defraud creditors.

In the present case, it is readily apparent that the transfers totalling $1,329,500.00, which occurred on the dates reflected earlier in this Opinion, were within one year prior to the initiation of proceedings against the Debtor. It is also apparent from Wolfram's deposition testimony, his conviction, and the evidence which was presented in this case, that Wolfram's use of the customer funds for his own purposes was an unlawful theft. The Defendants have admitted Wolfram intended to defraud the creditors of the Debtor at the time he diverted the funds from their accounts. Although the funds for the horse racing enterprise were not necessarily spent by Wolfram with the intent to defraud the customers, the availability of those funds was accomplished by and is the product of a deliberate fraud. Therefore, any disposition of those funds must be considered to be part of a continuing course of conduct which was intended to defraud the customers of the Debtor. Based upon these facts, it is evident that the elements of Section 548(a)(1) were present at the time the transfers in question were made. Accordingly, it must be concluded that they are avoidable under Section 548(a)(1) and recoverable under Section 550.

The Defendants have argued that the funds received as a result of these transfers were received from Wolfram and not from the Debtor. Since the provisions of Section 548(a)(1) only provide for the avoidance of transfers of property of the Debtor, they argue that the transfers in question are not subject to avoidance under this statute. While this argument initially appears to bear some merit, the facts of this case do not lend themselves to such a literal interpretation of the statute.

Initially, it should be pointed out in response to the Defendants' argument that the statute authorizes the avoidance of any transfer of the Debtor's property. It does not make the exercise of that authority contingent upon the party which initiates the transfer. All that is required is that there be a transfer of property in which the Debtor had an interest. In the present case, though the transfer may have been received from Wolfram, they were, nevertheless, transfers of the Debtor's property.

Furthermore, as has been previously indicated, Wolfram was the managing partner of the Debtor and was apparently the sole perpetrator of the embezzlement. It was the result of his position in the

business that he was able to conduct his unlawful activities. This position of authority and control was such that any action he took, either legal or illegal, with respect to the ill-gotten funds may equitably be imputed as actions of the Debtor. *See, Freehling v. Nielson,* supra. Therefore, any transfer received by the Defendant from Wolfram was, in effect, a transfer from the Debtor.

In addition, despite the fact that the funds transferred may have been debited from the Wolfram accounts as they were reflected on the internal books kept by the Debtor, that fact does not, in and of itself, divest the Debtor of an interest in the funds. As was explained in *McGraw v. Bressler (In re Bell & Beckwith),* 44 B.R. 656 (Bkcy.N.D.Ohio 1984), at the time the funds were diverted from customer accounts, the Debtor had the right to actual possession of the funds which were otherwise held in the accounts of its customers. The right to possession is a proprietary interest in property which can, if transferred, serve as the basis for an action under 11 U.S.C. Section 548(a). *See, Derryberry v. Albers (In re Albers),* 60 B.R. 206 (Bkcy. N.D.Ohio 1986). A review of the account statements and documents finds that the funds transferred originated from the Debtor's account at a local bank. The fact that they were in that account indicates that the Debtor was entitled to immediate possession, regardless of any accounting for those funds which was reflected on the Debtor's books. In light of this right and the fact that a mere transfer of the Debtor's property is sufficient to give rise to an avoidability of the transfer, it must be concluded that the Debtor had sufficient interest in the funds transferred so as to subject the transfers to avoidance under Section 548(a)(1). Therefore, the Defendants' argument is without merit.

The Defendants have also asserted that the Debtor received a reasonable equivalent value in exchange for these transfers. It is argued that this value is found in the services rendered to Wolfram's interest in their mutual venture.

While it appears that this argument also warrants some consideration, such consideration finds that it allows the Defendants to assume both sides of an otherwise diametric position. On one hand, the Defendant argues that the transfers were received from Wolfram rather than from the Debtor, thereby negating the possibility of a transfer of the Debtor's property. On the other hand, the Defendant asserts that the Debtor benefited from his services, despite the fact that it had no legal commitment to or involvement with the business which was so benefitted. However, since the Court has regarded the actions of Wolfram to be those of the Debtor for purposes of these transfers, and since the Debtor's estate has been assigned any interest Wolfram had in his affairs with the Defendant, the Court will consider the question of whether or not there was a reasonable exchange of equivalent value, and whether or not the protection available under Section 548(c) should be extended to the Defendants.

A review of the Defendant's evidence finds that there are a significant number of entries made on the various ledgers and schedules which were offered into evidence. Although the testimony offered by the Defendants indicates that they provided the services to the business in accordance with their oral agreement with Wolfram, the testimony does little to support, explain, or verify, the documentary evidence. In addition to the absence of any meaningful explanation as to the meaning of these documents, there has been no resolution or reconciliation of the figures which appear on these exhibits. All that appears are numerous entries which purport to represent the value of services and materials provided by the Defendants during the periods in question. These records and the testimony which accompanies them do not adequately explain or establish the existence of the value which is alleged to have been received by the Debtor in exchange for the transfers. Furthermore, the inconclusiveness of these records fails to demonstrate that the rendition of services was

sufficiently contemporaneous with the transfers so as to hold that the transfers were offset by an exchange of value. While the totality of the evidence indicates that there were continuing transactions conducted by the parties in furtherance of their business, and that certain obligations and liabilities arose with each transaction, the records and testimony do not set forth with sufficient certainty and clarity the resulting balance of those transactions.

In the absence of evidence which specifically sets forth the value given by the Defendants either prior or subsequent to the transfers in question, this Court cannot conclude that the Defendants have established the required degree of proof in order to prevail on their defense asserted pursuant to Section 548(c). Without that defense, the transfers are subject to avoidance under 11 U.S.C. Section 548(a)(1). Since the Defendants were the immediate recipients of these transfers, the transfers are recoverable under 11 U.S.C. Section 550(a)(1). Accordingly, it must be concluded that the Defendants are liable to the Trustee for the amount of the transfers which occured between and including February 17, 1982, through February 3, 1983.

## II

A review of Counts Two, Three, Four, Five, Six, and Seven finds that each alleges a cause of action to avoid the transfers which have been founds to be avoidable under 11 U.S.C. Section 548(a)(1) as set forth in Count One. Each of these respective Counts asserts the avoidability of the transfers on the basis of succeeding subsections of 11 U.S.C. Section 548 or the provisions of the Ohio Revised Code respecting fraudulent conveyances. However, each of these additional Counts address the same transfers which were placed into question in Count One. The provisions of 11 U.S.C. Section 550(a), though directly intended to limit a trustee's right to recover as against multiple transferees, indicates that a trustee is only entitled to one recovery on any claim prosecuted under Section 548. Furthermore, equity dictates that a trustee is only entitled to a single recovery for individual transfers, regardless of whether such transfers are avoidable under state or federal law, and regardless of the number of statutory provisions which provide a basis for their recovery. Having determined that the transfers in question are avoidable under the Trustee's initial assertion of fraudulent conveyance under Section 548(a)(1), it is unnecessary for this Court to determine the avoidability of the transfers as alleged in the additional fraudulent conveyance actions.

## III

Count Eight of the Second Amended Complaint alleges the avoidability of the transfers which occured on November 15, 1982, December 21, 1982, February 1, 1983, and February 3, 1983. This action is brought pursuant to 11 U.S.C. Section 547(b), the provisions of which state in pertinent part:

> ...the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition ...
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Under these provisions, a trustee may avoid the transfer of an interest of a debtor in property which was made to a creditor on account of an antecedent debt within ninety days prior to the petition if the debtor was insolvent at the time of the transfer and if the transfer enabled the creditor to receive more than would have

been received in a Chapter 7 proceeding had the transfer not been made. *Hartwig Poultry, Inc. v. C.W. Service (In re Hartwig Poultry, Inc.)*, 57 B.R. 549 (Bkcy.N.D. Ohio 1986).

A review of the evidence finds that the transfers which were made on November 15, 1982, and December 21, 1982, were apparently made as a part of Wolfram's continuing diversions for the purpose of funding the partnership with the Defendant. As has been previously indicated, these transfers were a part of the ongoing relationship between the parties as to the ownership, purchase, maintenance, and racing of standardbred horses. The testimony and the evidence indicates that each of these transactions had an effect on the amount which was owed by and between the parties. However, as will be more fully explained later in this Opinion, the evidence does not adequately demonstrate the amounts which were owed by or to each of the parties. As a result, this Court is unable to determine whether or not there was in existence at the time of the transfers an antecedent debt to the Defendants. The existence of such an obligation is a fundamental element of the statute which authorizes the recovery of pre-petition preferential transfers. Since the Court is unable to establish with certainty whether, at the time of the transfers, there existed an outstanding debt to the Defendants, one of the elements of Section 547(b) cannot be satisfied.

Furthermore, in consideration of the aforementioned transfers and the transfer of February 3, 1983, the evidence does not reflect any rational nexus between the two prior transfers, which otherwise appear to be part of the continuing diversions, and the transfer of February 3, 1983. The size of the February 3, 1983, transfer, in and of itself, strongly suggests that Wolfram may have intended this as an attempt to place as much money as possible into the hands of his partner prior to the initiation of liquidation proceedings. Without evidence to explain the motivation behind this transfer or the demonstration of a pre-existing debt to which it was to be applied, the question also arises as to the existence of an antecedent debt. However, more fundamental to the analysis of these transfers is the question of the legitimacy of the Trustee's position regarding the existence of an antecedent debt. As has been previously indicated, the Trustee has alleged in other causes of action that the Defendants are liable for the balance of the "account" which is alleged to have been effectively created during the arrangements between Wolfram and the Defendants. Nevertheless, in the present action, the Trustee asserts that there was an identifiable debt owed by Wolfram to the Defendants as the result of their arrangements. If the Trustee is allowed to proceed on both actions, he will, as did the Defendants in defense of Count One, be seeking the benefit of both sides of a diametric position. On one hand, he asserts that the Defendants are liable to the Trustee on an "account". On the other hand, for purposes of this Count, he asserts that there was a debt owed by Wolfram to the Defendants as the result of the transactions which are included in his action on "account". Such adverse interpretations of the same facts cannot serve as the foundation for two causes of action by a plaintiff against the same defendant. Since the Trustee, in prosecuting this action, places greater reliance on the assertion that the Defendants are ultimately liable to the estate on this "account", and since the evidence quantifiably suggests such liability, it must be concluded that there was no antecedent debt on account of which these three transfers were made. Accordingly, it must be concluded that they are not avoidable or under Section 547(b).

However, as to the transfer of February 1, 1983, a review of the evidence finds that the Two Hundred Sixty Thousand and no/100 Dollars ($260,000.00) which was transferred was debited from the Defendant's customer account at the Debtor. These funds, though actually paid from the Debtor's account at the local bank, were received by the Defendant on

account of an identifiable debtor-creditor relationship which existed between the Debtor and the Defendant. Although the funds in the account may have actually belonged to the Defendant, the fact that the Debtor had possession of the funds creates the debtor-creditor relationship. *See, Derryberry v. Albers,* supra. Furthermore, it is readily apparent that this transfer occured within ninety days prior to the filing of the Debtor's liquidation, and that the Debtor was insolvent at the time the proceedings were filed. *See,* 11 U.S.C. Section 547(f).

In addition, the record indicates that the Defendants received a greater percentage of this obligation as a result of the transfer than they would have received from the administration of this case. By virtue of the February 1, 1983, transfer, the Defendants received virtually one hundred percent of the amount which was in their account. However, the record also shows that the Defendants are liable to the estate for the fraudulent transfers and, as will be seen, other obligations. The extent of that liability greatly exceeds the claim assertable by the Defendants for the amounts that would have been in the account had the transfer not been made. Under the provisions of 11 U.S.C. Section 502(d), the claim of any entity which is liable to the estate for a transfer avoidable under Section 548 will not be allowed until such time as the entity has satisfied that liability. Since the Defendants have not satisfied that liability, their claim for what would have been in the account could not be allowed. Without an allowable claim, the Defendants are not entitled to receive any distribution from the estate. As a result, the transfer enabled them to receive a substantially greater percentage of the debt than they would have received through the administration of this case.

Furthermore, even if the Defendants tendered the amount of their Section 548 liability, it does not appear that their claim for the account would have been paid to the extent of the February 1, 1983, transfer. A review of the Debtor's account statement for the Defendant's account finds that as of January 20, 1983, the assets of the Defendant's account consisted of 51,850 shares of Passport Travel, Inc. As of February 5, 1983, shares of Passport Travel, Inc. were valued at approximately $2.00 per share. The account statement indicates that as of January 20, 1983, the Defendant's account was credited with Two Hundred Sixty Thousand Forty-two and 42/100 Dollars ($260,042.42). The difference between the value of the shares of Passport Travel, Inc. and the balance of the account indicates that the remainder of the account was for cash. Under the provisions of 15 U.S.C. Section 78fff–3(a), an account creditor is entitled to receive insurance coverage up to Five Hundred Thousand and no/100 Dollars ($500,000.00), provided no more than One Hundred Thousand and no/100 Dollars ($100,000.00) of their claim is for cash. Therefore, the Defendant's claim for securities was approximately One Hundred Three Thousand Nine Hundred and no/100 Dollars ($103,900.00). The remaining claim of One Hundred Fifty-six Thousand One Hundred Forty-two and 42/100 Dollars ($156,142.42) would be for cash. Since insurance coverage limits claims for cash to One Hundred Thousand and no/100 Dollars ($100,000.00), the Defendant would have to assert Fifty-six Thousand One Hundred Forty-two and 42/100 Dollars ($56,142.42) as an over-the-limits claim. At the present time, over-the-limits claimants have not been fully satisfied, nor does it appear, at this point in the proceedings, that they will be fully paid.

Therefore, based upon the evidence and this Court's review of the record, it must be concluded that all elements of a preference under 11 U.S.C. Section 547(b) have been satisfied relative to the February 1, 1983, transfer. It must also be concluded that the Trustee is entitled to have that transfer avoided, and that the Defendants are liable under 11 U.S.C. Section 550 to the Trustee for the amount of that transfer. However, inasmuch as the Court has already found the transfer to be avoidable under 11 U.S.C. Section 548(a)(1), and since the provisions of 11 U.S.C. Section 550(c)

limit a trustee's recovery as to transfers which are avoidable under multiple provisions of Title 11, the Defendants' liability under this Count Eight of the Second Amended Complaint is concurrent with the liability found as to Count One.

## IV

The Court turns to Count Thirteen of the Second Amended Complaint, wherein the Trustee seeks to recover the amount owed on the promissory note. A review of the facts finds that this note was executed by the Defendant on or about October 15, 1982. The amount of the note was Three Hundred Ninety-three Thousand Five Hundred and no/100 Dollars ($393,500.00) and appears to represent the Defendant's requisite share of four horses which were purchased by Wolfram for the partnership. Although no documents or notes had been executed for any of the parties' prior transactions, it appears that there was a growing concern at that time over the status of their affairs. It also appears that the execution of the note was their first attempt to reduce to writing the terms of their relationship. The evidence reflects that there have been no payments by the Defendant which were specifically intended to be applied to the promissory note. The Defendant testified that the absence of any payments resulted from the fact that Wolfram customarily made oral statements which absolved the Defendant from any liability which accrued during each year of their partnership. The Defendant's federal tax returns do not reflect any indication that this forgiven debt was listed as income for any year in which it was allegedly discharged.

 The right to recover on a negotiable instrument arises at the time the obligation matures. *See generally*, 40 Ohio Jur.2d *Negotiable Instruments* Section 621. In order to recover on an instrument, all that must be shown is that the obligee is entitled to demand payment, that the instrument has matured, and that a demand has been made on the obligor for payment. In the present case, the Trustee

is the beneficiary of Wolfram's assignment of assets and interests. Included in this assignment was any interest Wolfram had as an obligee on the note. Therefore, the Trustee is the proper party to enforce the instrument. The terms stated on the note indicate that the obligation is payable twelve months after the date of execution. The testimony reflects that the Trustee has made a demand for payment from the Defendant subsequent to the due date, and that the demand has not been satisfied. This evidence establishes all the conditions precedent to the Trustee's right to recover, by way of judgment, the obligation represented by the note. Accordingly, it must be concluded that the Trustee is entitled to judgment on this Count Thirteen.

 The Defendant has admitted his liability on the obligation represented by the promissory note. However, he has disputed the amount of that liability, arguing that the services rendered subsequent to its execution have effectively reduced the amount which is ultimately owed on the instrument. He has also argued that not withstanding the execution of the note, Wolfram, prior to his execution of the assignment, forgave any amount which may have been owed. These arguments address the question of whether or not there has been an accord and satisfaction of the obligation. An accord and satisfaction is an affirmative defense which must be both plead and proven. *See*, Bankruptcy Rule 7008, Federal Rule of Civil Procedure 8(c), *see also*, 15 Ohio Jur.3d *Compromise, Accord & Release* Section 59. A review of the Defendants' Answer to the Second Amended Complaint finds that this defense has not been plead, either affirmatively or inferentially. Nevertheless, and in consideration of the merits of this defense, the Defendant's testimony regarding Wolfram's alleged release is insufficient to negate the effect of an executed promissory note. This is especially apparent in light of the fact that the forgiven debts are not reported as income for tax purposes, an act which is required by law. *See*, 26 U.S.C. Sections 61(a)(12), 108. Furthermore, as

was indicated earlier in this Opinion, the Defendant's records do not make specifically clear the circumstances of the services which are claimed to offset the amount shown on the note. As a result, the Court cannot conclude that the Defendant's assertion as to the forgiveness or reduction of the debt should be given merit.

## V

The Court now turns to consider Counts Nine, Ten, Eleven and Fourteen. In the actions found in those Counts, the Trustee seeks an accounting for the unpaid balance owed on his contract with the Defendant for the sale of interests in horses, the imposition of a constructive trust over those assets of the Defendants' which were purchased with funds provided by Wolfram (Counts Ten and Eleven), and a recovery of the amount owed by the Defendants on the basis of their ongoing relationship with both Wolfram and the Trustee.

In reviewing each of these actions, it becomes readily apparent that their basis results, either in whole or in part, from the ongoing series of transactions which occurred between Wolfram and the Defendant since the inception of their relationship, or between the Defendant and the Trustee since the execution of the assignment. In order to prevail in any of these actions, it would be necessary for the Trustee to demonstrate, with specificity and clarity, each of the transactions which are alleged to have taken place between the parties that affects the amount which is ultimately sought. In recognition of this necessity, the Trustee offered a comprehensive accounting of the records which reflect the transactions between these parties. This voluminous collection of documents comprises the foundation upon which the Trustee asserts these actions. Although this collection is apparently summarized in an additional volume, there is absent from this evidence and from the testimony offered at trial a resolution or reconciliation of the numerous facets of the parties' relationships.

In an attempt to reach such a reconciliation, and to discern from the evidence an amount which is consistent with the requested relief, the Court has reviewed the evidence at great length. Despite these efforts, the documents cannot be found to set forth an amount which fairly and accurately reflects the balance of the obligations between the parties. Specifically, and for example, there is no accounting which traces the respective debits and credits against the parties for each animal purchased. There is also no ledger which accounts for the disposition of the transfers made by Wolfram to the partnership. Furthermore, the accounting does not present a clear picture as to how those transactions reflected by the exhibits to the accounting ultimately add up to the amount which alleged to be owed.

 This Court should not, and cannot, be required to sift through multifarious documents and testimony in an effort to congregate those facts which are necessary to establish a party's action or defense. Rather, it is the duty of the litigants to present their evidence in a manner which logically, systematically, and efficiently leads to the conclusion sought. If the evidence does not clearly establish the basis, upon which the Court can, in an independent review, determine liability, the litigants have effectively failed to meet their burden of proof with regard to their respective position in the case. As a result, judgment cannot be granted to the extent the elements of an action or defense are not clearly demonstrable in the record.

 In this case, the Court has already explained the Trustee's failure to conclusively establish the time, place, nature, circumstances, and amounts of each transaction which is alleged to effect the amount owed between the parties. As to Count Nine, the evidence clearly indicates that the Defendants performed services for which the Trustee, as beneficiary of Wolfram's assignment, is liable. Furthermore, the contract of sale appears to contemplate that there would be a reconciliation as to the amount of that liability, and that the

parties would adjust that liability against the amount of the purchase price retained by the Defendant. However, the Trustee has not demonstrated, to the satisfaction of this Court, that any or all of that retained amount was unearned by the Defendant. Since such evidence is required in order to prevail on a cause of action for either an accounting or for breach of contract, it must be concluded that the Trustee has failed to prove his cause. Accordingly, the Trustee is not entitled to judgment on Count Nine.

As to Counts Ten and Eleven, wherein the Trustee seeks the imposition of a constructive trust over all assets which were acquired with funds provided by Wolfram, it is apparent that such an action would require a demonstration as to each of those assets which are alleged to be included in the trust. It would also require a showing as to the transfers which provided the means for the asset's acquisition, and the circumstances which surrounded each purchase. For the reasons previously stated, the evidence does not illustrate sufficient facts so as to warrant the imposition of such a trust. There is not sufficient proof that Wolfram's contribution towards the partnership were the sole means by which the assets currently in the possession of the Defendants were acquired. Furthermore, there are not adequate facts from which this Court could define the limits and extent of the trust. Without specific proof which definitively demonstrates these facts, the Court cannot grant the relief requested in Counts Ten and Eleven.

Turning to Count Fourteen, wherein the Trustee seeks to recover the amount which is allegedly owed "on account", the Court has previously noted the inability to reconcile the information set forth in the Trustee's accounting with either the evidence or the requested relief. While it appears that there have been relationships, transactions, and obligations between the respective parties which gave rise to mutual credits and debits from this account, the Court has not been able to determine from the accounting the true balance of these debits and credits. This inability results primarily from the fact that there is no comprehensible demonstration as to how the information found in the accounting ultimately establishes the relief requested by the Trustee. Without being able to follow, from the inception of the parties' arrangement, the transactions which effect the "account", and without some guidance as to how the evidence accounts for and determines the balance of the account, the Court cannot find that the Trustee has offered sufficient proof so as to be entitled to judgment on this cause of action. Accordingly, judgment must be entered for the Defendants on Count Fourteen.

**VI**

The final action which must be addressed is Count Twelve, wherein the Trustee seeks a dissolution of the partnership which existed between Wolfram and the Defendant, and which now exists between himself and the Defendant. In reviewing this action, the Court notes that to the extent made relevant to this proceeding, the Uniform Partnership Act has been enacted in both Ohio and Florida. *See,* Ohio Revised Code Section 1775.01 *et seq.* and Florida Statutes Annotated Section 620.56 *et seq.* Although the parties have not addressed the issue of whether or not the resolution of this action should be guided solely by the law of one state, the similarity of these statutes renders moot the requirement for any such consideration. Therefore, for purposes of adjudicating the present case, the Court will, as a matter of convenience, cite to the Ohio Revised Code.

The provisions of Ohio Revised Code Section 1775.31 state in pertinent part:

(B) On the application of the purchaser of a partner's interest under section 1775.26 or 1775.27 of the Revised Code, the court shall decree a dissolution:

(2) At any time if the partnership was a partnership at will when the interest was assigned or when the charging order was issued.

Under this section, a Court may order the dissolution of a partnership if the assignee of a partner's interest in a partnership at will petitions the Court for a decree of dissolution. *See*, 13 Ohio Jur.3d *Business Relationships* Section 992. A partnership at will is generally considered to be one designated to continue not for a fixed period of time, but exists only during the pleasure of the parties, and which may be dissolved by any partner without previous notice. Black's Law Dictionary 1277 (Rev. 4th ed.1968).

 In the present case, it does not appear that the Defendant and Wolfram ever executed a formal partnership agreement. Furthermore, it does not appear that the business of the partnership was sufficiently limited in time or purpose so as to characterize the partnership as a partnership for a particular purpose. Accordingly, it must be considered as a partnership at will. However, even if it could be considered a partnership for a particular purpose, Wolfram's assignment to the Trustee, whose purpose and interest is solely the liquidation of assets, effectively renders the arrangement a partnership at will. In addition, although the Trustee may not interfere in the management or administration of the partnership's affairs, *see*, Ohio Revised Code Section 1775.26, he is entitled, by virtue of his status as assignee, to petition the Court for an order of dissolution. The issuance of such an order does not require any specific findings other than the fact that the petitioner is an assignee of a partner's interest, and that the partnership existed at will. Since those requirements have been met in this case, it must be concluded that the partnership should be dissolved.

 In addition to the dissolution of the partnership, the Trustee requests that the affairs of the partnership be wound up. This process is the logical successor to the dissolution and is intended to settle all affairs of the partnership as between both creditors and partners of the partnership. In the present case, a winding up is required so as to enable the Trustee to derive the benefit of Wolfram's assignment for the estate. Since the partnership is not immediately subject to the jurisdiction of Title 11, it would appear that a winding up under state law is the most readily available method by which to accomplish the Trustee's primary purpose. Therefore, it must be concluded that the Trustee is entitled to commence a winding up pursuant to the applicable provisions of the Uniform Partnership Act.

However, in reaching that conclusion, the Court notes that the winding up process necessarily entails a resolution of the obligations between the parties in this case. As previously discussed, the parties have not prevailed in their efforts to demonstrate the amounts which are owed as the result of their transactions within and respecting the partnership's business. Since these obligations are the same as those which would be disputed during the course of the winding up, and since the parties have failed to prove the prior debts, the Court must undertake the winding up from the position that there were no obligations, except as otherwise noted in this Opinion, owed by or to either of the parties. The Court's decision on the issue of the "account" will be considered binding for purposes of the winding up procedure. *See, Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), *see generally*, 63 Ohio Jur.3d *Judgments* Section 409.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that Judgment be, and is hereby, entered for the Plaintiff on Count One of the Second Amended Complaint in the amount of One Million Three Hundred Twenty-nine Thousand Five Hundred and no/100 Dollars ($1,329,500.00).

It is FURTHER ORDERED that Judgment be, and is hereby, entered for the Plaintiff on Count Eight of the Second Amended Complaint in the amount of Two Hundred Sixty Thousand and no/100 Dollars ($260,000.00). However, the liability imposed by this Judgment is concurrent with the liability imposed by the Judgment

respecting Count One of the Second Amended Complaint.

It is FURTHER ORDERED that Judgment be, and is hereby, entered for the Plaintiff on Count Thirteen of the Second Amended Complaint in the amount of Three Hundred Ninety-three Thousand Five Hundred and no/100 Dollars ($393,-500.00) plus interest at the rate of eight percent (8%) from October 15, 1982.

It is FURTHER ORDERED that Judgment be, and is hereby, entered for the Plaintiff on Count Twelve of the Second Amended Complaint.

It is FURTHER ORDERED that the Partnership known as Country Boy Estates be, and is hereby, DISSOLVED.

It is FURTHER ORDERED that the Partnership known as Country Boy Estates be wound up pursuant to the provisions of the Uniform Partnership Act as set forth Ohio Revised Code Section 1775.01 *et seq.* and Florida Statutes Annoted Section 620.-56 *et seq.*

It is FURTHER ORDERED that Counts Two, Three, Four, Five, Six, Seven, Nine, Ten, Eleven, and Fourteen of the Second Amended Complaint be, and are hereby, DISMISSED.