**Hans–Martin SCHEMPP,
Plaintiff–Appellant,**

**v.**

**LUCRE MANAGEMENT GROUP, LLC, a Colorado limited liability company; and Richard L. Rollings, Defendants–Appellees.**

**No. 99CA0738.**

Colorado Court of Appeals,
Div. I.

April 27, 2000.

As Modified on Denial of Rehearing
July 20, 2000.

Certiorari Denied Feb. 26, 2001.

Kennedy & Kennedy, P.C., Cynthia T. Kennedy, Lafayette, Colorado, for Plaintiff–Appellant.

Robert A. Seefried, Longmont, Colorado; Richard L. Rollings, Jr., Ozark, Missouri, for Defendants–Appellees.

Opinion by Judge NIETO.

Plaintiff, Hans–Martin Schempp (Schempp), appeals from a judgment entered in favor of defendants, Lucre Management Group, LLC (Lucre), and Richard L. Rollings (Rollings). We reverse and remand for further proceedings.

Schempp held a judgment against Helmut Schaal (Schaal), a citizen of Germany, that Schempp registered as a foreign judgment in Adams County District Court. Schempp then brought this action against both Lucre and Rollings seeking relief because Schaal transferred ten office condominium units to Lucre and Rollings. At the conclusion of Schempp's case, the court dismissed his claims on the motion of Lucre and Rollings. This appeal followed.

Schempp asserted that conveyance of the ten office condominium units violated three sections of the Colorado Uniform Fraudulent Transfer Act (CUFTA), §§ 38–8–101 to 38–8–112, C.R.S.1999. He asserted that the transfer violated §§ 38–8–105(1)(b) and 38–

8–106 because Schaal did not receive a reasonable equivalent value in exchange for the property. He also asserted that the transfer violated § 38–8–105(1)(a) because the property was transferred to Lucre with actual intent to hinder, delay, or defraud the creditors of Schaal.

Schempp presented the following evidence. Schaal owned ten office condominium units either in his own name or through business entities that he controlled. Schaal, who did not live in the United States, gave Rollings a power of attorney to sell the ten condominium units for the benefit of Schaal. Rollings was a certified public accountant who provided accounting services to Schaal and his business entities. Rollings conveyed an offer to Schaal to purchase the ten office condominium units for $940,000, but did not inform Schaal that he was making this offer for himself. The $940,000 offer was equal to the debt secured by a deed of trust encumbering the ten office condominium units, but left Schaal owing $68,000 in past due taxes. Using the power of attorney from Schaal, Rollings conveyed the ten units to Lucre, the company he had formed for the purpose of holding title, and which he fully controlled. At this time Rollings knew Schaal was having many financial difficulties, which included having been sued for failure to honor a $650,000 check.

## I.

The trial court found that Schaal did not make the transfer with the actual intent to hinder, delay, or defraud any creditor, as required by § 38–8–105(1)(a). Schempp asserted that the court applied the wrong legal standard in deciding the motion for directed verdict. He argues that the evidence supports a finding that Rollings was an "insider" as defined in CUFTA, and that Rollings' conduct should be imputed to Schaal for purposes of determining fraudulent intent. We agree.

■ No Colorado cases have addressed these issues. However, § 548 of the Bankruptcy Code has language very similar to § 38–8–105. 11 U.S.C. § 548 (1994 & Supp. 2000). Section 548 of the Bankruptcy Code and § 38–8–105 also have the same purpose, i.e., to afford protection to creditors. Therefore, interpretations of § 548 are instructive. See Prefatory Note, Uniform Fraudulent Transfer Act, § 38–8–101, C.R.S.1999.

■ Section 38–8–105(2) provides factors which the court may consider in determining actual intent under § 38–8–105(1)(a). These factors are referred to as "badges of fraud." 5 L. King, *Collier on Bankruptcy*, § 548.04[2][b](15th ed.1999).

It is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors. Therefore, as is the case under the common law of fraudulent conveyance, courts applying Bankruptcy Code § 548(a)(1) frequently infer fraudulent intent from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud.

*Max Sugarman Funeral Home Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir.1991) (citations omitted); *see also In re Acequia Inc.*, 34 F.3d 800 (9th Cir.1994). "Since the intent to hinder, delay, or defraud creditors is seldom susceptible of direct proof, courts have relied on badges of fraud." Prefatory Note, Uniform Fraudulent Transfer Act § 38–8–101, C.R.S.1999. While a single badge of fraud may only create suspicion of fraud, several badges of fraud considered together may infer intent to defraud. *Johnson v. Dowell*, 592 So.2d 1194 (Fla.App.1992)(applying Florida's Uniform Fraudulent Transfer Act which is similar to CUFTA); *see also Max Sugarman, supra.*

## A.

■ The court found Rollings was not an insider only because Schaal was unaware of Rollings' self-dealing. However, the court did not consider the statutory definition of "insider" when deciding this issue. One of the badges of fraud listed in § 38–8–105(2)(a) is "[t]he transfer or obligation was to an insider." "Insider means . . . [a]n affiliate or . . . [a] managing agent of the debtor." Section 38–8–102(8)(d) and (e), C.R.S.1999. "Affiliate means . . . a person who operates the debtor's business under a lease or other agreement or controls substantially all of the

debtor's assets." Section 38–8–102(1)(d), C.R.S.1999.

The following evidence relates to the claim that Rollings was an insider. Rollings had served as a certified public accountant for Schaal and his business entities since 1989. He devoted 40% to 50% of his time to these endeavors. Rollings had been involved in the liquidation of Schaal's assets in the United States. Schaal had given Rollings power of attorney to sell the office condominium units. Rollings had conducted significant portions of Schaal's business with regard to the condominium units for several years. The office condominium units were the only real property owned by Schaal in his own name in the United States at the time of the transfer. The evidence also showed that Rollings was aware of the deed of trust encumbering the condominium units, and Rollings was aware of Schaal's substantial financial distress.

Accordingly, we conclude that the court erred when it failed to consider the evidence as it relates to the definition of insider found in § 38–8–102, C.R.S.1999.

### B.

The court also failed to determine if Rollings' actions should be imputed to Schaal. In some circumstances it is appropriate to impute the intent of an insider to a debtor who transfers property to the detriment of creditors.

> When the transferee or obligee is in a position to dominate or control the debtor's disposition of his property, however, his intent to hinder, delay, or defraud creditors may be imputed to the debtor so as to render the transfer fraudulent within Section 548(a)(1)(A), regardless of the actual purpose of the debtor transferor.

5 L. King, *Collier on Bankruptcy* § 548.04[1](15th ed.1999).

Bankruptcy cases interpreting § 548 of the Bankruptcy Code relating to transfers made with actual intent to hinder, delay, or defraud creditors, have consistently held that "[w]here the transferee is in a position to dominate or control the debtor's disposition of his property, the transferee's intent to hinder, delay, or defraud creditors may be imputed to the debtor." *In re Vaniman International, Inc.*, 22 B.R. 166, 182 (Bankr. E.D.N.Y.1982). *See also In re Bell and Beckwith*, 64 B.R. 620 (Bankr.N.D.Ohio 1986); *In re F & C Services, Inc.*, 44 B.R. 863 (Bankr.S.D.Fla.1984);

■ We find the above cited authorities to be persuasive and hold that, for purposes of CUFTA, the intent of the transferee can be imputed to the debtor when the transferee is in a position to dominate or control the disposition of the debtor's property. Therefore, we conclude that the court erred when it failed to consider Rollings' intent when determining whether Schaal had actual intent to hinder, delay, or defraud Schaal's creditors.

### II.

Schempp also argues that the court erred in its finding on the issue of reasonably equivalent value. We agree.

■ In order to succeed on a fraudulent transfer claim pursuant to § 38–8–105(1)(b) and § 38–8–106, a creditor must show that the debtor did not receive a reasonably equivalent value in exchange for the property. Reasonably equivalent value, in the context of CUFTA, is not wholly synonymous with market value. However, market value is an important factor to consider in the assessment. Determination of reasonably equivalent value requires analysis of all the facts and circumstances surrounding the transaction. *Silverberg v. Colantuno*, 991 P.2d 280 (Colo.App.1998) (*cert. granted* Oct. 18, 1999). The standard of "reasonably equivalent value" implies a rule of reasonableness in light of the particular circumstances. *In re General Industries Inc.*, 79 B.R. 124 (Bankr.D.Mass.1987).

■ Schempp produced evidence showing that other similar individual office condominium units had been sold for amounts in excess of the $94,000 per unit paid by Lucre, including one unit Rollings sold for Schaal for $130,000. Schempp also established that Lucre, acting through Rollings, sold one of the office condominium units for $115,000 within

days after closing the transaction with Schaal. An expert testified that the condominium units had a value of $125,000 each if sold individually. Schempp also produced evidence that the bank, which loaned Lucre $940,000 to purchase the ten units, considered the loan amount to be only 75% of the value of the ten office condominiums. This bank had knowledge of the office condominiums' value since it was the same bank that held the deed of trust on them securing Schaal's loan. However, Schempp did not produce any evidence showing the value of the condominium units if all ten units were sold at the same time in a single transaction. The court found the bulk sales aspect of the case to be significant, and properly considered it in determining the question of reasonable equivalent value.

The weight to be accorded the evidence is committed to the sound discretion of the trial court. The factual findings of the trial court will not be disturbed on appeal if they are supported by the evidence. *Tiger v. Anderson*, 976 P.2d 308 (Colo.App.1998). However, here the court failed to consider the insider issue and the intent of Rollings imputed to Schaal insofar as these impacted its determination of reasonably equivalent value. The court was required to consider all the facts and circumstances surrounding the transaction. Therefore, the court failed to consider all the relevant evidence.

Accordingly, we reverse the order dismissing Schempp's claims and remand the cause for further proceedings consistent with the opinions expressed here.

Judge METZGER and Judge RULAND concur.