In re Bryan J. GILBERTSON, Debtor.

Phillip D. ARMSTRONG, Trustee of the Estate of Bryan J. Gilbertson, Plaintiff,

v.

JOHN DEERE COMPANY,
Minneapolis, Minnesota,
Defendant.

Bankruptcy No. 85–05622.
Adv. No. 87–7129.

United States Bankruptcy Court,
D. North Dakota.

July 25, 1988.

---

**14.** See note 11, *supra.*

**1008**

Phillip Armstrong, Minot, N.D., for plaintiff.

Jack McDonald, Jr., Bismarck, N.D., for defendant.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By complaint filed November 23, 1987, the Chapter 7 trustee for the Debtor, Estate of Bryan J. Gilbertson (Debtor), seeks to avoid a cash transfer of $12,450.00 to defendant, John Deere Company (John Deere), alleging the same to constitute a preferential payment under section 547(b) of the Bankruptcy Code. John Deere denies that under the facts a preference occurred and additionally takes the position that the transfer occurred in the ordinary course of business and is thereby excepted under section 547(c)(2). The parties filed a joint stipulation of uncontested facts and presented additional evidence at trial held before the undersigned on June 30, 1988.

### Findings of Fact

The facts as material are as follows:

The Debtor was a custom combiner who, on April 26, 1984, purchased a new John Deere combine, header and pickup platform from Devils Lake Equipment Company, a John Deere dealer. As a part of the transaction John Deere took in on trade an older combine, paid off the unpaid balance and added it to the amount financed. The Debtor signed a Variable Rate Loan Contract Security Agreement covering the three items of purchased equipment. The total amount financed was $87,086.00 with interest at 14% calculated to be $31,009.50 over the term of the contract. Payments were structured so that there was one down payment of $2,580.00 on July 1, 1984, (representing principal only) followed by five annual payments of $23,103.10 each due on January 1 of each year.

John Deere duly perfected its security interest in the three items of equipment by the filing of a U.C.C. 1 financing statement filed with the Ramsey County Register of Deeds on May 4, 1984.

The Debtor paid the $2,580.00 down payment as required but when the first annual payment came due on January 1, 1985, he ran into difficulties. In such situations it is common for John Deere to enter into deferral agreements, the purpose of which is to make it easier for a distressed individual to make a payment by spreading the payment out.

On January 4, 1985, John Deere deferred one-half of the January 1, 1985, payment to July 1, 1985. The Debtor paid one-half of the January 1, 1985, payment in January 1985 and sent John Deere a check for the deferred balance of $12,450.00 on July 29, 1985. John Deere cashed the check on July 30, 1985, which was 77 days prior to the Debtor filing for relief on October 16, 1985. Neither the dealer nor John Deere was

aware of the Debtor's intention to file bankruptcy.

At the time of the petition filing there remained due on the contract four annual payments of $23,103.00 each. However, subsequent to the bankruptcy filing, John Deere repossessed the equipment and sold it back to the dealer for a total sum of $75,588.00 which represented the contract payoff. At the time, the top book value of the three items of equipment was $76,550.00 and average trade-in value was $72,226.00. In September 1986 the dealer, after certain repair expenses, re-sold the equipment for $75,000.00. Total repairs amounted to $916.00.

*Conclusions of Law*

.1.

To prevail under section 547 the trustee must prove, by a preponderance of the evidence, the following elements:

1. A transfer of the debtor's property;
2. Made within 90 days before the date of petition filing;
3. Made to or for the benefit of the creditor;
4. On account of an antecedent debt;
5. While the debtor was insolvent;
6. Which enabled the creditor to receive more than it would have received in a Chapter 7 liquidation if the transfer had not been made.

*In re Hoggarth*, 78 B.R. 1000, 1001 (Bankr. D.N.D.1987). With regard to the fifth element section 547(f) provides that the debtor is presumed to have been insolvent during the 90 days preceding the date of the petition filing. John Deere asserts that, in spite of the presumption of insolvency, the trustee failed in his burden of persuasion because he did not offer any evidence regarding the Debtor's financial condition at the time of the transfer.

The Senate Judiciary Committee notes regarding section 547(f) state that the presumption of insolvency operates in accord with Rule 301 of the Federal Rules of Evidence. Rule 301, in part, provides that "a presumption imposes on the party against whom it is directed the burden of

going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion." Thus the ultimate burden of persuasion is not shifted by the presumption of section 547(f). *Clay v. Traders Bank of Kansas City*, 708 F.2d 1347, 1351 (8th Cir.1983).

In the case at bar the trustee has the burden of persuading the court of each of the elements of a section 547 claim. Thus he generally has the burden of producing evidence to convince the court of each of the elements. With regard to the element of the Debtor's insolvency, however, the presumption of section 547(f) shifts to John Deere the burden of producing at least some evidence that the Debtor was solvent. *See e.g., In re Belize Airways Ltd.*, 18 B.R. 485, 489 (Bankr.S.D.Fla. 1982). When the creditor offers no evidence at all as to the debtor's solvency, the trustee may rely on the presumption and not present any evidence regarding the debtor's insolvency. *E.g., Id.; In re Kennesaw Mint, Inc.*, 32 B.R. 799, 802 (Bankr. N.D.Ga.1983); *In re Coco*, 67 B.R. 365, 371 (Bankr.S.D.N.Y.1986). In effect if the transferee offers no evidence to rebut the presumption, the debtor's insolvency is taken as a fact. *E.g., In re A.J. Nichols, Ltd.*, 21 B.R. 612, 616 (Bankr.N.D.Ga.1982); *In re Day Telecommunications, Inc.*, 70 B.R. 904, 909 (Bankr.E.D.N.C.1987). If a transferee were to introduce some evidence of the debtor's solvency, the trustee would still have the burden of persuading the court that the debtor was insolvent or losing the case if he is unable to do so.

In the instant case John Deere has not introduced any evidence that the Debtor was solvent to rebut the presumption created by section 547(f). Accordingly, John Deere has failed in its burden of production and the court concludes that the Debtor was insolvent at the time of the transfer to John Deere.

2.

The next element in dispute in this case is whether the payment to John Deere allowed it to receive more than it would have received in a Chapter 7 liquidation if the

payment had not been made. Payments to fully secured creditors are not considered preferences because the creditor does not receive more than it would in a liquidation. In re Flaten, *50 B.R. 186, 195 (Bankr.D.N. D.1985). The issue in this case then becomes an inquiry into John Deere's secured status.*

■ Section 506(a) provides that a creditor's claim "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." In the absence of evidence indicating that the value of property changed between the time a petition was filed and the time of a post-petition sale the bankruptcy court may accept the sales price as the value at the time of the petition. *See Fitzgerald v. Davis,* 729 F.2d 306, 308 (4th Cir.1984). In September of 1986, less than one year after the Debtor filed for relief on October 16, 1985, the equipment sold for $75,000.00. The court is satisfied as to the reasonableness of this sales price as it is bracketed between the top book value for the machinery at that time and its average trade-in value. The value of the machinery, however, did not remain constant between the time of filing and the time of sale. During that interval $916.00 worth of repairs were performed on the machinery. After backing out the value of the repairs, the court concludes that the value of the machinery at the time of filing was $74,084.00.

■ The other side of the calculation of John Deere's secured status involves the determination of the amount of debt outstanding at the time of filing. On October 16, 1985, four annual payments of $23,-103.00, or a total of $92,412.00 remained to be paid on the loan contract. This amount, however, includes interest charges that had not yet been incurred at the time of the petition filing. When the amount of interest not yet incurred at the time of filing is subtracted from the total due on the contract, the amount owed to John Deere at the time of filing was $75,588.00. When this amount is compared to the value of the machinery it indicates that John Deere is undersecured by $1,504.00.

■ Section 506(a) divides a creditor's claim into a secured claim and an unsecured claim. In this case John Deere's secured claim is $74,084.00 and its unsecured claim is $1,504.00. There is a conclusive presumption that payments received are credited first to a creditor's unsecured debt. *Drabkin v. A.I. Credit Corp.,* 800 F.2d 1153, 1157 (D.C.Cir.1986); *Barash v. Public Finance Corp.,* 658 F.2d 504, 508 (7th Cir.1981); *In re McCormick,* 5 B.R. 726, 729–30 (Bankr.N.D.Ohio 1980). In this case the debtor's secured debts greatly exceed the value of his assets and unsecured creditors will receive no distribution. Since the transfer permitted John Deere to receive full payment of its $1,504.00 unsecured claim, the court concludes that the sixth element of a section 547 claim has been met in this case. The other elements of the claim are also present in this case. Consequently, the court concludes that the $12,450.00 payment to John Deere constitutes a preferential payment under section 547(b).

### 3.

Even if the trustee establishes a preference under section 547(b) the transferee may establish a defense under section 547(c). Section 547(c), in part, provides:

(c) The trustee may not avoid under this section a transfer—

\* \* \* \* \* \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

\* \* \* \* \* \*

Congress designed section 547(c)(2) to "leave undisturbed normal financial rela-

tions. [The exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 6329. Thus "the purpose of § 547(c)(2) was to encourage creditors to continue short-term credit dealings with troubled debtors in order to forestall bankruptcy rather than encourage it. *In re Morris*, 53 B.R. 190, 192 (Bankr.D.Or.1985). Without the ordinary course of business exception creditors would be unwilling to extend credit to a financially infirm enterprise for fear that any payments received from the enterprise might later be avoided by the trustee in bankruptcy. *In re First Software Corp.*, 85 B.R. 669, 673 (Bankr.D. Mass.1988).

■ For a transaction to fall within the ordinary course of business exception it must be ordinary for both the debtor and the creditor. *See e.g., In re Ullman*, 80 B.R. 101, 102 (Bankr.S.D.Ohio 1987). In testing a transaction for "ordinariness" several courts have concluded that a payment made after it was initially due is outside of the ordinary course of business as a matter of law. *See e.g., In re Craig Oil Co.*, 785 F.2d 1563, 1567 (11th Cir.1986); *Barash v. Public Finance Corp.*, 658 F.2d 504, 511 (7th Cir.1981); *In re Gold Coast Seed Co.*, 24 B.R. 595, 597 (9th Cir. BAP 1982). In addition, one bankruptcy court has concluded that partial payments are not in the ordinary course of business. *See In re Air One, Inc.*, 80 B.R. 145, 148 (Bankr.E.D.Mo.1987).

■ In the case at bar the Debtor's $12,-450.00 payment to John Deere on July 29, 1985, was initially due on January 1, 1985, in the amount of $23,103.00. However, this payment was made pursuant to a deferral agreement negotiated between the Debtor and John Deere. The issue thus becomes whether a transfer pursuant to a restructuring agreement is in the ordinary course of business.

Two other courts have previously examined the issue of whether payments made pursuant to restructuring agreements during the ninety day preference period are in the ordinary course of business. *See In re Gull Air, Inc.*, 82 B.R. 1 (Bankr.D.Mass. 1988); *In re Magic Circle Energy Corp.*, 64 B.R. 269 (Bankr.W.D.Okla.1986). In *Magic Circle* the debtor made four installment payments to a creditor within 90 days of filing a Chapter 11 petition. The payments were made pursuant to a restructuring agreement executed by the parties approximately one and one-half years before the filing. The court held that the restructured payments were in the ordinary course of business, reasoning that "the mere restructuring of payment terms does not alter the fact that the underlying debt was incurred under normal circumstances." *Magic Circle*, 64 B.R. at 273. The court stated,

> [T]he requirement that the creditor show that the transaction was conducted in the ordinary course of business should usually be easy to meet. Since this showing is required merely to assure that neither the debtor nor the creditor do anything abnormal to gain an advantage over other creditors, an extensive showing that such transactions occurred often, or even regularly, is not necessary. The transaction need not have been common; it need only be ordinary. A transaction can be ordinary and still occur only occasionally.

*Id.* at 274–75 (quoting *In re Economy Milling Co.*, 37 B.R. 914 (D.S.C.1983)). The court in *Magic Circle* concluded that the payments received under the restructuring agreement were made in exchange for consideration and not so unusual as to render them outside of the ordinary course of business. *Id.* at 274–75. The court also noted that to find a restructure payment outside the ordinary course of business would have the harmful effect of discouraging debt restructuring. *Id.* at 275.

In *Gull Air* a creditor financed the sale of three airplanes to the debtor. When the debtor defaulted on the note payments the creditor initiated a lawsuit to collect the amounts due on the notes. Before the litigation concluded the parties reached a workout agreement by which the debt was

restructured and the lawsuit was dismissed. After filing a Chapter 11 petition the debtors sought to recover as preferences the workout agreement payments made within ninety days preceding the filing. The court in *Gull Air* concluded that the restructured payments were not made in the ordinary course of business. *Gull Air*, 82 B.R. at 3. The court reasoned that section 547(c)(2) was not intended to protect payments made in response to unusual collection efforts, and in its opinion the relationship between the civil lawsuit and the restructured payments constituted an unusual collection effort. *Id.* at 4.

In the instant case the evidence indicates that deferral agreements are common in the retail farm implement sales industry. At the time the contested payment was made John Deere was unaware that the Debtor was considering bankruptcy. The Debtor negotiated the deferral agreement with John Deere more than six months before making the contested payment. The agreement only restructured one year's payment on the note, subsequent annual payments were to be made in accordance with the original payment schedule. The agreement called for two payments of which the Debtor had already made one at the time of the July 29, 1985, payment. John Deere did not coerce the Debtor into making the payment with a civil lawsuit or even the threat of a lawsuit. Moreover, John Deere charged the Debtor deferral interest on the portion of the payment delayed until July. Thus the Debtor paid a consideration for the right to defer his payment. These circumstances do not lend themselves to characterizing the deferred payment as an attempt to make a grab for the Debtor's assets, or an unusual collection practice. Thus the court concludes that the July 29, 1985, payment to John Deere of $12,450.00 was made in the ordinary course of business and thus did not constitute a preference.

Accordingly, IT IS ORDERED that judgment be entered in favor of the defendant, John Deere Company, dismissing the complaint of the plaintiff, Phillip D. Armstrong, trustee of the Estate of Bryan J. Gilbertson.

LET JUDGMENT BE ENTERED ACCORDINGLY.